ANDREW J. BROUGHEL, JR., ADMINISTRATOR, *vs.* THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY.

First Judicial District, Hartford, March Term, 1901.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Under General Statutes, §§ 1008, 1009, the mere loss or deprivation of life itself, unaccompanied by physical pain or suffering, is sufficient for the recovery of substantial damages by the decedent's executor or administrator.

In such a case the principal element of damage is the loss of earning capacity resulting to the decedent himself and thus, in a sense, to his estate.

The trial court ruled that the measure of damages was the value, at the time of the injury, of the decedent's life to himself. *Held* that by this the court meant, not what the decedent would have taken for his own life, but the amount his estate lost by the cutting off of his earning power; and that as relevant upon that question, evidence that he was only twenty-six years old and in excellent health, was admissible.

Argued March 7th—decided April 2d, 1901.

ACTION to recover damages for personal injuries resulting in the instantaneous death of the plaintiff's intestate, brought to the Superior Court in Hartford County and heard in damages to the court, *Prentice, J.;* facts found and judgment rendered for the plaintiff for $5,000, and appeal by the defendant for alleged errors in the rulings of the court. *No error.*

At a former term of this court a new trial was granted in this cause (72 Conn. 617) for the purpose of ascertaining the *quantum* of damages only. The trial court found (1) that the intestate, Davis, died as the direct result of the injuries complained of in the complaint; (2) that his death "was instantaneous, and was neither attended nor preceded by any pain or suffering from the injuries, or by any apprehension thereof;" and (3) that at the time of his death he was twenty-six years of age and in excellent health.

The evidence to show the age and health of Davis at the time of his death, was offered as bearing upon the extent of the results of the injury, and as showing that "the damage from an injury resulting in death was greater in the case of a man in the prime of life and in good health, than in the case of a man who was about to die anyway, whether from illness, or old age." This evidence was objected to by the defendant as immaterial and irrelevant, "and because it laid no foundation to measure the damages;" and special objection was made to it "in so far as it was offered for the purpose of showing the value of Davis' life to himself." The court overruled the objections and admitted the evidence.

The defendant claimed as a matter of law that the value of the life of Davis to himself was not the rule of damage, and that mere deprivation or loss of life, in itself, was not a proper element of substantial damages. The court overruled these claims, and took as the measure of damages " the value at the time of the injuries of the deceased's life to himself." The reasons of appeal are based upon these rulings of the court.

*Henry Stoddard* and *Frank L. Hungerford,* with whom was *James T. Moran,* for the appellant (defendant).

*Edward D. Robbins,* for the appellee (plaintiff).

TORRANCE, J. The important questions upon this appeal are these : (1) Under our statutes relating to death by wrongful act, can there be a recovery of substantial damages for mere loss of life alone ? (2) If so, what is the measure of damages in such case ? These questions will be considered in the order stated.

When this case was before this court in another aspect of it, one of the points decided was that the mere fact that death was instantaneous, and without pain or suffering of any kind, did not of itself prevent the recovery of substantial damages. *Broughel* v. *So. New Eng. Telephone Co.,* 72 Conn. 617. In effect, that case, we think, decides the first question against the contention of the defendant. It was found by the trial court, in that case, that death was the sole and only consequence of the negligent act, and yet it was decided that the plaintiff was entitled to recover substantial damages for that consequence. That decision can only be supported on the theory that under our statutes, of the kind here in question, damages may be recovered for the mere loss and deprivation of life alone ; for in that case it was found that no other consequence save mere loss of life followed from the negligent act.

A negligent act causing death is an invasion of the right to life, the first and highest of all rights, on which all others

are based.   That act may be attended by divers consequen-
ces and effects.   It may be followed, as it is found it was
in the present case, by death alone, instantly and painlessly;
or it may be followed by bodily and mental suffering and
agony as well as by death.   We think our statutes make
the wrong-doer in such cases liable in damages to the ex-
ecutor or administrator of the decedent for any and all such
consequences, and among them for the mere loss and depri-
vation of life.   For such consequences he is to pay "just
damages," not exceeding a prescribed amount.   This view
of this matter was the one taken in *Murphy* v. *New York &
N. H. R. Co.*, 30 Conn. 184, 187.   This court there said:
" If to take one's liberty or one's property without justifica-
tion is an injury, how much more is the taking of human
life?   The elementary books, in speaking of absolute rights,
classify them thus: 1st, the right of personal security; 2d, the
right of personal liberty; and 3d, the right to acquire and
enjoy property.   If these rights are valued in this order
of preference, then every man of common understanding
would at once pronounce it absurd to hold that it is no in-
jury to a person to take his life, while it is to strike him a
light blow.   Such a distinction is not worth talking about,
and has no foundation or existence in the law, as it has none
in common sense."

In the legislation of this State, statutes making wrong-
doers liable in damages for mere loss of life have been quite
common.   The first printed edition of the statutes contained
a provision of this kind.   It was therein provided that if
" any person shall lose his life " by means of a defective
bridge or highway under certain circumstances, the wrong-
doer should pay " to the parents, husband, wife, or children,
or next of kin to the person deceased " the sum of $334, to
be recovered in an action at law.   Rev. of 1808, p. 120.   In
1851 an Act was passed providing that " if any person shall
be deprived of life " in consequence of certain acts or omis-
sions of the servants of any railroad company, such company
should pay to the parties named in the Act the sum of $1,000
to be recovered in an action of debt on the statute.   Public

Acts of 1851, Chap. 43.   In 1853 an Act was passed provid-
ing that if the life of any person "shall be lost" under cer-
tain prescribed circumstances, by reason of the negligence
of a railroad company, such company should be liable to pay
damages not exceeding $5,000, nor less than $1,000, to
the persons described in the Act.   Public Acts of 1853,
Chap. 74.   In 1869 an Act was passed providing that if the
life of any person "shall be lost" by the neglect of a rail-
road company to maintain fences as prescribed in the Act,
such company should be liable to pay damages not exceed-
ing $5,000 to the persons named in the Act.   Public Acts of
1869, Chap. 48.   In 1877 a general Act was passed pro-
viding that for injuries "resulting in death" from negligence,
"the party legally in fault for such injuries" should be liable
for "just damages not exceeding five thousand dollars."
Public Acts, 1877, Chap. 78.   These and other Acts of a
kindred nature, as they existed at the time of the Revision
of 1888, were embodied in §§ 1008 and 1009 of that Revision,
and it was under the provisions of these sections that the
present suit was brought.

This legislation clearly shows an intent to make wrong-
doers, in certain cases and under certain limitations, liable in
damages for mere loss or deprivation of life; and there is
nothing in any legislation prior or subsequent to 1888 that
indicates an intent on the part of the legislature to exempt
such wrong-doers from such liability.   We are not aware of
any decision of this court that is inconsistent with the view
here taken of the legislation in question, and we are satisfied
that it is the correct one.

The next question relates to the measure of damages for
mere loss of life.   So far as we are aware this question, in
the precise form in which it is now presented, has not before
been passed upon by this court, and we are at liberty to de-
cide it upon principle.   It is probably true, in point of fact,
that in suits heretofore brought in this State for injuries re-
sulting in death from wrongful act, the value of the life of
the deceased has, with other elements, entered into the award
of damages; but, if so, that element has not been, so far as

we are aware, separately discussed nor considered by this court. The statutes upon this subject do not, in terms at least, furnish any guide in this matter; they merely provide that the wrong-doer in such cases shall pay "just damages," not exceeding $5,000.

There are, however, certain considerations arising out of the nature and character of this kind of legislation in our State, and out of the nature of death as one of the harmful consequences of an injury, that may serve as guides in coming to a right conclusion in this matter. From the beginning our legislation of this kind was intended to subserve at least two purposes. (1) It was designed to make persons and corporations whose negligence might injuriously affect the lives and limbs of others, more careful and circumspect, by continuing their liability for the results of their negligence even after the death of the victim, and by making them liable in damages, to a limited extent, for death, as one of the consequences of that negligence. In this aspect of it, this legislation may be said to be of a punitive or penal character. *Connecticut Mut. Life Ins. Co.* v. *New York & N. H. R. Co.*, 25 Conn. 265, 273. (2) This legislation was also, and mainly, designed to make some compensation in money for mere loss of life, which compensation, as part of the estate of the injured party, should go to certain designated persons; not full compensation of this kind for such a consequence, but "just damages" not exceeding a prescribed amount. In this last aspect of it, this legislation plainly contemplates that the extent of such loss may be greater in one case than another; or, to put this in a different way, that the value of the life to the injured party—or, what is the same thing, to his estate—in terms of money may be greater in one case than in another.

Under our decisions the loss of life is not to be estimated from the standpoint of the statutory beneficiaries; their loss, if any, arising from the death, cannot be taken into account. *Goodsell* v. *Hartford & N. H. R. Co.*, 33 Conn. 51; *McElligott* v. *Randolph*, 61 id. 157. This being so, the only other thing that can be done is to estimate the loss from the standpoint

of the party injured, and thus, in a sense, take the value of his life to him as one of the elements in measuring the damages. But in what sense shall the value of his life to him be taken as such an element? Shall it be what the man thought or imagined his life was worth to him; that is, what a man would take in exchange for his life? Clearly not. In that aspect of the injury there can be no measure for it, because a man's life to himself, no matter what his age, or condition of health, or expectancy of life, may be, outweighs in value the universe. In that sense it is folly to talk of the value of any life being worth less than the maximum sum prescribed by the statutes. Our statutes, in providing compensation in part for death alone, as the consequence of a negligent act, do not proceed upon any such view of the value of life as this, else would they have provided for a fixed sum as damages in each case; but they proceed, in part at least, upon the theory that a loss of earning capacity by death is a loss to a man's estate, which may be greater or less according to circumstances, and so, within a maximum limit, a sliding scale of damages is provided. Under these statutes the right to recover a limited compensation for death alone, as one of the results or consequences of a wrong inflicted upon a man in his lifetime, survives to, or is vested in, his executors or administrators for the benefit of certain designated beneficiaries, and is thus in a certain sense made a part of his estate, regarded as that aggregate of rights and possessions which a man leaves at his death. This legislation seems to regard the life of a person injured as having a greater or less value, according to circumstances, to him, or, what is the same thing in this connection, to his estate; and one of its objects in awarding damages for mere loss of life is to compensate his estate, in the sense above explained, for that loss; and in cases like the present, that loss, thus measured, may be the chief or only element to be considered in fixing the extent of the defendant's liability. We do not mean to say that this would be the only element to be considered in cases like the one at bar, but only that ordinarily in them it might or would be the principal element.

It is unnecessary here to decide what other elements, if any, may properly be considered in such cases, for we think the trial court took, as the measure of damages in this case, the loss to the estate of Davis in the sense above explained, and it does not appear that in fixing the *quantum* of damages it considered any other element. It is true, the court says that it took as the measure of damages " the value of the deceased's life, at the time of the injuries, to himself; " and it is true that this language is somewhat ambiguous ; it may mean that the court took as the measure of damages, what a man would take in exchange for his life, or it may mean that the court measured the damages by the loss to the estate of the decedent in the sense above explained. We think this last is what the court did, and what it meant to say it did, for it heard, and, we are bound to presume, considered, evidence which it would neither have heard nor considered if it had proceeded upon the other view of the extent of the loss. But it is said that a loss of this kind is too vague, indefinite and uncertain to be estimated pecuniarily, and is, in its nature, incapable of judicial determination. We think there is nothing in this claim.

Injuries, in the sense of wrongful invasions of a right, may be considered as of two kinds : (1) pecuniary, and (2) non-pecuniary. Pecuniary injuries are such as can be, and usually are, without difficulty estimated by a money standard. Loss of real or personal property, or of its use, loss of time, and loss of services, are examples of this class of injuries. Non-pecuniary injuries are those for the measurement of which no money standard is or can be applicable. As the books phrase it, damages in such cases are " at large." Bodily and mental pain and suffering are familiar examples of this class. It is within this last class that injury arising from loss of life falls, under our statutes. There is no more legal difficulty in estimating damages for loss of life in cases like the present than there is in estimating damages for bodily or mental pain and suffering, or for maim or disfigurement, or for injured feelings ; and yet damages for this sort of injury are being constantly estimated and awarded by the courts in

proper cases. The difficulty, or even impossibility, of estimating with certainty in money the amount of injury in this class of cases is never considered a reason for refusing redress. *Cook* v. *Bartholomew*, 60 Conn. 26 ; *Post* v. *Hartford Street Ry. Co.*, 72 id. 362 ; *Pennsylvnnia R. Co.* v. *Allen*, 53 Pa. St. 276 ; *Ballou* v. *Farnum*, 11 Allen, 73.

In the view we have taken of this case, the rulings upon evidence of which the defendant complains were correct, and the rulings upon the claims of law made by the defendant were also correct.

There is no error.

In this opinion the other judges concurred.