JAMES H. McKIERNAN, ADMINISTRATOR, *vs.* LOUIS A. LEHMAIER.

Third Judicial District, Bridgeport, October Term, 1911.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

A master is responsible for the act of his servant within the scope of his employment and in the execution of the master's business. Accordingly the owner of an automobile is liable for the negligence of his chauffeur, in running over and killing a person in the highway, while returning to the place where he had been instructed by his master to call for him.

The fact that after leaving his master and before returning for him the

chauffeur drove the car about town looking for a place to get his hair cut, is immaterial.

The application of this general rule of law to varying facts is often difficult, the ultimate inquiry usually resolving itself into one of fact under the particular circumstances of each case.

The question of contributory negligence is in most instances one of fact for the determination of the jury, whose verdict should not be set aside where it appears that there was evidence upon which they might reasonably have reached their conclusion.

Where an automobile is driven during the evening along a principal street of a city in a dark place at an excessive rate of speed and in a zigzag course confusing to a pedestrian, and no signal of its approach is given, a verdict for the plaintiff, who, when struck, was on the street with a lantern apparently trying to find a lost article, will not be disturbed on the ground that he was guilty of contributory negligence.

The fact that only $5,000 damages can be awarded under General Statutes, § 1094, for causing one's death by negligence, does not necessarily prove that such sum should be treated as the maximum value of a human life.

The amount of damages recoverable in this class of cases is largely within the province of the jury, and its conclusion will not be set aside as excessive unless the amount is so large as to indicate that manifest injustice has been done, and the wrong is so plain as to denote that the jury have mistaken the rules of law, or to justify the suspicion that it was the result of corruption, prejudice, or partiality.

A verdict of $5,000 for the death of a healthy man twenty-eight years of age, earning $18 per week, will not be set aside as excessive.

Where improper remarks are made in argument to the jury, the adverse party should promptly object and, if necessary, except; for he cannot remain silent and speculate on the chances of a favorable verdict and afterward complain if it proves unsatisfactory.

The conduct of a trial is largely within the discretion of the presiding judge, whose action will be reviewed only in a clear case of the abuse of such discretion.

In the present case the trial court refused to set aside a verdict of $5,000 because of remarks of counsel for the plaintiff to the effect that both political parties in this State were pledged to remove the limit of damages in cases resulting in death, that the adverse counsel had advocated such removal, and that in some jurisdictions verdicts of $40,000 had been rendered. *Held* that while these remarks were improper and unfair, it could not be said as matter of law that the jury were improperly influenced by them, or that, in refusing a new trial upon this ground, the lower court abused its discretion.

Argued October 31st—decided December 19th, 1911.

ACTION to recover damages for · personal injuries resulting in the death of the plaintiff's intestate and alleged to have been caused by the negligent operation of the defendant's automobile by his servant, brought to the Superior Court in Fairfield County and tried to the jury before *Shumway, J.;* verdict and judgment for the plaintiff for $5,000, and appeal by the defendant. *No error.*

. *John H. Light,* for the appellant (defendant).

*J. Belden Hurlbutt* and *Leo Davis,* for the appellee (plaintiff).

RORABACK, J.   From the evidence it appears that there was no substantial controversy as to the following state of facts:   The plaintiff's intestate, George F. Seiler, about 8:45 in the evening of August 6th, 1910, was run over and instantly killed by an automobile owned by the defendant and operated by his chauffeur, Charles Shatzer.   At that time Shatzer was running the automobile from Norwalk to South Norwalk, in a dark place in the highway which was about fifty-six feet wide. On the night of the accident Shatzer had driven the defendant and a friend from the defendant's home in Norwalk to Hoyt's Theatre in South Norwalk, reaching the theatre about 8 o'clock.   Seiler, when he was killed, was twenty-eight years of age, perfectly healthy, and earning $18 per week.

The defendant claims that the Superior Court erred in overruling his motion to set aside the verdict, because the evidence showed that Charles Shatzer, at the time of the accident, was on an errand of his own, and was not in the execution of the defendant's business; that the deceased, at the time of the accident, was guilty of contributory negligence; that the verdict was excessive; and that the character of the argument made to

the jury by counsel for the plaintiff improperly influenced their verdict.

There was evidence for the consideration of the jury from which they might fairly have found that Shatzer was the defendant's chauffeur, and that on the night of the accident he brought the defendant from his home in upper Norwalk a distance of about two and one half miles, to a theatre in South Norwalk. The business centres of the two cities are a mile and one half apart. When the defendant alighted he told the chauffeur to be at the theatre at 9:30. The chauffeur then asked his employer to loan him a quarter with which to have his hair cut, and he did so. The chauffeur then visited two or three barber shops in South Norwalk and, finding them crowded, he took his master's car and rode to the city of Norwalk, and found the shops there also crowded. He then started to drive back to the theatre in South Norwalk, where he was going to wait for the defendant as he had been instructed. While on his way back to the theatre to get the defendant the car struck and killed Seiler.

It is conceded that the relation of master and servant existed between the defendant and Shatzer, and this being established, the question arises whether, at the time Seiler was struck by the automobile and killed, the servant was acting within the scope of his employment.

The general rule upon this subject is well stated in *Stone* v. *Hills*, 45 Conn. 44, 47, as follows: "For all acts done by a servant in obedience to the express orders or directions of the master, or in the execution of the master's business, within the scope of his employment, and for acts in any sense warranted by the express or implied authority conferred upon him, considering the nature of the services required, the instructions given, and the circumstances under which the act is

done, the master is responsible; for acts which are not within these conditions the servant alone is responsible." This court held that "if the servant in going *extra viam* is really engaged in the execution of the master's business within the scope of his employment, it is immaterial that he joined with this some private business or purpose of his own." While the rule of such liability may be easily comprehended, its application to the varying facts is often difficult. The ultimate inquiry usually resolves itself into one of fact under the particular circumstances of each case. *Ritchie* v. *Waller*, 63 Conn. 155, 160, 163, 28 Atl. 29. Other cases, similar in their nature and circumstances, are of service in ascertaining what conditions are within or without the rule of liability. In *Loomis* v. *Hollister*, 75 Conn. 718, 55 Atl. 561, the master was held liable although the servant made a detour with the defendant's team of about one half a mile out of the direct course of his employer's business for the purpose of passing the post-office where he stopped to get a newspaper for himself. While the servant was in the post-office the defendant's horses in his care which he left unhitched, started for home, ran against the wagon of the plaintiff, and so caused the injury complained of. In *Chicago Consolidated Bottling Co.* v. *McGinnis*, 86 Ill. App. 38, the master was held liable for injuries inflicted by the driver of his wagon, though the driver had temporarily departed from his employer's service, and had deviated from the direct route over which his duty required him to pass, to call on his wife—and the accident occurred after the completion of this personal mission, at a time when the servant had again assumed control of his master's vehicle, but before he had actually again performed any act in his master's service. In *Sleath* v. *Wilson*, 9 C. & P. 607, 38 E. C. L. 355, where a master directed his servant to take his carriage to a livery-

stable, and the servant, instead of going directly to the stable, started off to deliver a package of his own, and in returning to the stable after the delivery of such package injured a pedestrian through his negligent driving, it was held that the master was liable.

In the case before us the servant, with the knowledge and consent of his master, left him with his motor vehicle to engage in a matter personal to the servant for a limited period. The services of the day in which the servant was engaged had not been completed when the accident happened. He was not then wholly at liberty from his master's engagement and pursuing his own business exclusively. If the injury had been inflicted while Shatzer was going from barber shop to barber shop in Norwalk and South Norwalk, the question would have been different. But we do not deem it necessary to express any opinion upon this phase of the case, because the accident occurred when the private business of Shatzer had been completed, and he was operating the defendant's automobile back, over the road which he had previously traveled, for the purpose of discharging the duty for which he was employed and intended to perform. When the automobile struck Seiler, Shatzer was not engaged in any affair of his own, but was attending to the business of the defendant in the scope of his employment. As bearing on the subject see *Mulvehill* v. *Bates*, 31 Minn. 364, 17 N. W. 959; *Rahn* v. *Singer Mfg. Co.*, 26 Fed. Rep. 912.

The question of contributory negligence, in most instances, is one of fact, and when a case involving this question is tried to the jury, their verdict should not be set aside when it appears that there was evidence upon which they might have reasonably rendered their decision. *Bradbury* v. *South Norwalk*, 80 Conn. 298, 300, 68 Atl. 321.

An examination of the record shows that from the

testimony given as to the care exercised by Seiler at
the time he was injured, the jury might have reasonably
found that in the evening of August 6th, 1910, Shatzer
was operating the defendant's automobile with the
lamps lighted, along one of the principal streets in
Norwalk, in a dark place, and at an excessive rate of
speed; that just before the automobile reached Seiler
it was operated so that it was running in a zigzag course
and in such a manner as to confuse Seiler, toward whom
the car was going. No signal of its approach had been
given to Seiler, who was on the street with a lantern
apparently attempting to find a knife which he had
lost. From the facts just stated, and other circum-
stances in evidence, the question whether the deceased
was in the exercise of reasonable care when he was
injured was properly decided by the jury.

The jury rendered a verdict for the plaintiff to re-
cover $5,000 as damages for the death of a young man
of twenty-eight years of age, of good habits, who was
in perfect health, and earning $18 a week. Our statute
in force when this action was commenced relating to
the limit of damages in actions for causing death, pro-
vided that "the executor or administrator of any person
whose death shall have been caused by negligence, may
recover of the party legally in fault just damages, not
exceeding five thousand dollars." General Statutes,
§ 1094. It does not necessarily follow that because the
legislature fixed the sum of $5,000 as the largest sum
that could be awarded in this class of cases, that this
amount should be treated as the maximum value of
a human life. It is stated in *Broughel* v. *Southern New
England Tel. Co.*, 73 Conn. 614, 619, 48 Atl. 751, that
the statute upon this subject does not, in terms at least,
furnish any guide in this matter, it merely provides that
the wrong-doer in such cases shall pay "just damages,"
not exceeding $5,000.

A general rule upon this subject, supported by the authorities of this State, is that the question as to the amount of damages which can be recovered in actions for death caused by negligence is one practically within the province of the jury, and their verdict will not be set aside as excessive unless it is so large as to indicate that manifest injustice has been done, and the wrong is so plain as clearly to denote that the jury have mistaken the rules of law by which the damages in the particular case were to be measured, or to justify the suspicion that it was the result of corruption, prejudice, or partiality. This is not such a case. *McCann* v. *McGuire,* 83 Conn. 445, 447, 76 Atl. 1003.

The defendant complains because the plaintiff's counsel, in the course of his argument to the jury, stated that: "The judgment that may be recovered in actions of this kind is too small. In the recent campaign, both parties in their platforms pledged themselves to remove the limit in these cases. Many of you have heard my friend (referring to counsel for the defendant) urge from the platform the removal of the statutory limitation in accident cases resulting in death. In some jurisdictions, verdicts as high as thirty and forty thousand dollars have been rendered in cases of this character."

These remarks were unfair and should not have been made, but it does not necessarily follow that a new trial should be granted on that account. The defendant was entitled to an objection and exception to these unwarranted statements. But the record discloses that no objection was made, because of this improper language, to the trial court until after the verdict was rendered. A party who has full knowledge of improper conduct by his adversary's attorney which is calculated to arouse the sympathies or friendly feelings of the jury, cannot remain silent and speculate on the chances of

a favorable verdict, and afterward be heard to complain when the verdict is unsatisfactory. *Case* v. *Clark,* 83 Conn. 183, 76 Atl. 518; *James* v. *Bowen,* 83 Conn. 702, 78 Atl. 420. The conduct of the trial must necessarily be left largely to the discretion of the presiding judge, a discretion which in its very nature cannot be made the subject of review by this court, except in a clear case of the abuse of that discretion. *State* v. *Laudano,* 74 Conn. 638, 51 Atl. 860; *State* v. *Washelesky,* 81 Conn. 22, 70 Atl. 62; *State* v. *Cabaudo,* 83 Conn. 160, 166, 76 Atl. 42. The defendant contends that these remarks were intended to influence the jury to render a verdict against him which is excessive and unwarranted by the evidence. The trial court, with an opportunity to fully appreciate the probable effect of these statements upon the jury, has found otherwise. We cannot say that it was wrong in so doing.

There is no error.

In this opinion the other judges concurred.