SIDNEY H. WHITLA, RESPONDENT, v. CHARLES IPPOLITO, APPELLANT.

Submitted October 29, 1925—Decided February 1, 1926.

1. Defendant, having obtained a contract from a municipality for the construction of a sewer, proceeded to excavate by blasting, severely shattering and damaging plaintiff's building—*Held*, that while the defendant had a legal right to blast in the execution of his contract, he should exercise that right with due regard for the rights of others lawfully adjoining the highway, and that if he was negligent in the proper exercise of that duty by failing to utilize the recognized and available methods of blasting to the plaintiff's detriment and damage, the defendant was legally liable for the loss thus occasioned.

2. Where there was testimony from which the jury might infer that a proper regard for the safety of adjoining property would induce the defendant to adopt what was called as standard practice or system of channeling or line drilling before blasting, in making an excavation, as a result of which the shock incident to ordinary blasting would be in a large measure minimized, and there was also sufficient substantive testimony in the case, to enable the jury, in the absence of satisfactory testimony by the

defendant, or his witnesses, to infer that the defendant failed to employ this standard modern method of performing the work, the question whether what defendant did and the method of its execution, under the circumstances, constituted a reasonable exercise of due care was for the jury.

On appeal from the Essex County Circuit Court.

For the respondent, *Riker & Riker.*

For the appellant, *Frank G. Turner.*

The opinion of the court was delivered by

MINTURN, J. The defendant having obtained a contract from the city of East Orange for the construction of a sewer along Park avenue, immediately fronting the plaintiff's four-story apartment house, proceeded to excavate by blasting his way with dynamite through a formation of sandstone rock. For three months the blasting continued at daily intervals, and at the end of that period the plaintiff's house, with its thirty-two apartments for the occupation of tenants, was concededly severely shattered and damaged.

In many instances, as the result of the *modus operandi* employed, the ceilings fell, or were seriously cracked from the concussions. One tenant observed that the floor in the dining-room dropped, and the ceilings and walls cracked, and the framework about the windows in the dining-room and kitchen separated. When the wind was high the rooms were cold, and it became almost impossible to occupy the dining-room. In the hall there were cracks in the wall. In the basement the floor would raise up in response to a blast, and the roof showed a similar tendency; the blowers of the furnace would frequently stop and would knock and start up again. The plaintiff, conceiving that a situation thus engendered entitled him to a compensation for the damage resulting therefrom, instituted this suit, and was met at the trial with a motion upon the part of the defendant to non-suit, and to direct a verdict for defendant, upon the theory (1) that no legal negligence had been shown; (2) that the

defendant was engaged in performing a governmental duty which, *ipso facto,* exempted him from liability upon the legal theory of *damnum absque injuria.* The trial court refused the motions, and allowed the case to go to the jury, who found for the plaintiff, and, hence, this appeal.

The case was considered by the jury upon the theory outlined by the trial court, that, while the defendant had a legal right to blast in the execution of his contract, he should exercise that right with due regard for the rights of others lawfully adjoining the highway, and that if he was negligent in the proper exercise of that duty, by failing to utilize the recognized and available methods of blasting to the plaintiff's detriment and damage, the defendant was legally liable for the loss thus occasioned.

There was testimony in the case from which the jury might. infer that a proper regard for the safety of adjoining property would induce the defendant to adopt what was called a standard practice or system of channeling or line drilling before blasting, as a result of which the terrestrial concussion, shock and tremor incident to ordinary blasting would be in a large measure minimized, if not entirely, obviated. There was sufficient substantive testimony in the case to enable the jury, in the absence of satisfactory testimony by the defendant or his witnesses, to infer that the defendant failed to employ this standard modern method of performing a work obviously fraught with danger and damage to adjacent property. Whether what defendant did and the method of its execution, under such circumstances, constituted a reasonable exercise of due care, manifestly presented a jury question, and the learned trial court was legally correct in so treating it. The cases upon the subject are entirely, as we view them, reconcilable with the fundamental maxim of the law, *sic utere tuo ut alienum non laedas.* Neither the cases in this state of *Simon* v. *Henry,* 62 *N. J. L.* 486, nor *McAndrews* v. *Collerd,* 42 *Id.* 189, nor *Lydecker* v. *Board of Chosen Freeholders,* 91 *Id.* 622, are inconsistent with that basic doctrine, for in each of them, where the settled doctrine of non-liability of a municipality in a certain character of tort-feasance was not directly in

issue, the rationale of non-liability was predicated upon the assumption or proof that the contractor had or had not availed himself in the execution of the work, of those recognized physical instrumentalities which were reasonably and properly adapted to the proper, efficient and reasonably safe performance of the work, as demonstrated by modern progressive development in this as well as in other avenues of human endeavor.

The unjustifiable invasion of one's property rights may, in certain situations, constitute a private nuisance, as defined by Blackstone, *i. e.,* "anything done to the hurt or annoyance of the lands, tenements or hereditaments of another." 3 *Bl. Com.* 216; *Cleveland* v. *Citizens Gas Light Co.,* 20 *N. J. Eq.* 201; *Ross* v. *Butler,* 19 *Id.* 294; 20 *R. C. L.* 47, and cases cited.

In consonance with that conception, it has been held that an unjustifiable destruction of one's property, in such circumstances, is tantamount, under our constitutional conception, to an illegal appropriation in contravention of the fifth amendment of the federal constitution, providing for due process of law. Thus, it is stated "a serious interruption to the common and necessary use of property has been said to be equivalent to taking it within the constitutional provision, and it is not necessary that the land be absolutely taken." *Pumpelly* v. *Green Bay, &c., Co.,* 13 *Wall* 166; *United States* v. *Lynah,* 188 *U. S.* 445, 470; *Eaton* v. *Boston, &c., Railroad Co.,* 51 *N. H.* 504.

If it were necessary to invoke the doctrine frequently invoked in like cases of *res ipsa loquitor,* the rule would seem to have appropriate application in the case *sub judice.* That sententious aphorism of the Roman law by a series of adjudications, casts upon the alleged tort-feasor, upon the happening of an accident otherwise apparently inexplicable, the duty by satisfactory evidence of exculpating himself from the charge of negligence, and the corresponding liability arising therefrom. *Higgins* v. *Goerke-Krich Co.,* 91 *N. J. L.* 464; *affirmed,* 92 *Id.* 424; *Mackenzie* v. *Oakley,* 94 *Id.* 66; *Beck* v. *Hines,* 95 *Id.* 158, 162.

In the latter case this court observed: "A legal rule, not inapplicable to the situation, is that involved in the maxim *res ipsa loquitor,* which involves the inquiry whether, in the presence of danger resulting from abnormal conduct or operation, the defendant exercised due care to prevent the occurrence. Ordinarily, such accidents as that of *sub judice* do not occur from normal operation, and when they do occur, under alleged normality, the *onus probandi* is shifted to the defendant to show that the damage resulted through no lack of due care on his part, which inquiry necessarily becomes a jury question."

Such was the situation presented by the testimony in this case, and the factual status thus evolved manifestly presented a jury question. The contention is made, but not liberally supported by applicable authority, that in some esoteric manner the city constitutetd the defendant its *alter ego* for the execution of the work. In the absence of legislative authority authorizing such a status, the attempt, if made to create it, would be clearly *ultra vires.* 19 *R. C. L.* 414, and cases.

But, obviously, in contracting with the municipality the defendant did not lose his identity as an independent contractor, a status he concededly occupies in this relationship, as evidenced by the repeated adjudications of our courts. *Cuff* v. *Newark,* 35 *N. J. L.* 17; *Mann* v. *Max,* 93 *Id.* 191; *Olmer* v. *Perry,* 94 *Id.* 73.

The judgment will, therefore, be affirmed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, JJ. 16.

*For reversal*—None.