Ratushny v. Punch.

---

MIRON RATUSHNY, ADMINISTRATOR, *vs.* JOHN J. PUNCH ET AL.

Third Judicial District, Bridgeport, April Term, 1927.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

In an action for causing death by wrongful act, the problem of estimating damages—within the statutory limit of $10,000—is necessarily beset with serious difficulties and its solution cannot be reached by the application of any recognized test or certain standard. Therefore, a verdict representing the combined judgment of twelve men should not be set aside unless it is so palpably inadequate or excessive as to indicate that it was influenced by improper considerations.

While the statute fixes a maximum of recovery, it contains, neither expressly nor by implication, any indication of legislative intent that there should be a minimum, below which an award must necessarily and as a matter of law be held inadequate.

The principal, though not the only, element of recovery under the statute is the money value of the decedent's life to his estate.

measured, not simply by the amount which he would have earned if he had lived, or by the loss occasioned to the statutory beneficiaries by his death, but by the extent to which his estate would have benefited by his continued existence.

The only evidence touching damages in the present case was that the decedent, who was injured in an automobile accident and thereafter remained unconscious for fourteen hours until his death, was forty-nine years of age, sober and industrious, in good bodily health and earning $42 per week at his employment as an expert wire drawer, and that his expectancy of life was 21.95 years. No proof was offered of the expense of maintaining himself and his dependents, or as to what, if anything, he had been able to accumulate before his death. The jury returned a verdict for $1,000, which the trial court set aside as inadequate. *Held* (*two judges dissenting*) that the trial court erred.

The trial court stated, as one of the reasons for its action, that the verdict was manifestly the result of a compromise reached by the jury. *Held* that this reason was not supported by any circumstance appearing of record and that, in any event, it furnished no ground for setting aside the verdict.

Argued April 12th—decided June 28th, 1927.

ACTION to recover damages for the death of the plaintiff's intestate, alleged to have been caused by the defendants' negligence, brought to the Superior Court in New Haven County and tried to the jury before *Marvin, J.;* verdict for the plaintiff for $1,000, which the trial court set aside as inadequate, and from this decision the defendants appealed. *Error; judgment to be entered upon the verdict.*

*Joseph F. Berry,* with whom, on the brief, was *Frederick Miles,* for the appellants (defendants).

*Harold G. Green,* for the appellee (plaintiff).

HAINES, J. The plaintiff's decedent was injured while riding as a guest in an automobile of one of the defendants, which automobile was in collision with another automobile operated by the other defendant. The jury found in favor of the defendant Juswischen

Ratushny *v.* Punch.

and rendered a verdict for $1,000 in favor of the plaintiff against the defendant Punch. The statute law of this State provides that for injuries resulting in death, whether instantaneous or otherwise, or whether caused by the negligence of the defendant or by his wilful, malicious or felonious act, the executor or administrator of the deceased may recover from the party legally at fault for such injuries just damages not exceeding $10,000, with the proviso that the action shall be brought within a year, and that the cause must have arisen after August 1st, 1913. General Statutes, § 6137. The evidence furnished the jury has been certified and is before us, together with the memorandum of decision filed by the trial court setting aside the verdict of the jury on the ground that it was inadequate. It appears from the record that the decedent was rendered unconscious by the collision of the automobiles, and so remained until his death fourteen hours afterward, so the elements of pain and suffering as a basis for damages did not enter into the case, and the question before the trial court upon the motion was whether $1,000 was just damages for the death, as contemplated by the statute. That court felt that it was not adequate, and the memorandum of decision states the grounds upon which the court based its action in setting the verdict aside. The correctness of this action is the sole question presented by this appeal. In the absence of anything in the record to the contrary, we must assume that the jury was correctly instructed as to the law which should govern in fixing the amount of an award under the circumstances of this case. Those circumstances could reasonably have been determined by the jury from the evidence, to have been, that the deceased was of Russian birth, forty-nine years of age, sober and industrious, in good bodily health and earning $42 per week

at his employment with the Chase Metal Works, where
he had been for twenty years, and had lost no time in
that period; that he was an expert wire drawer by
trade, and for ten years had been sub-foreman, and
during the last year of his life had earned $2,100; and
further, that his expectancy of life was 21.95 years.
It does not appear that any evidence was furnished
to the jury as to the cost to the decedent of main-
taining himself or dependents, or as to what, if any-
thing, he had been able to accumulate to the time of
his death. In its memorandum of decision the trial
court says: `"The court thinks that it was not in the
mind of those who enacted the statute giving a right
of action in such cases and prescribing the limit of
damages to be recovered, that a verdict in such cases
should ever be less than $1,000"; and again: "It
being conceded that the mere loss of life in itself in
such cases entitles decedent's estate to recover some-
thing, it is manifest that a verdict of $1,000 is inade-
quate, and that it proceeded, not necessarily from any
prejudice or ignorance on the part of the jury, but
from the fact that the jury was divided in its opinion
as to which of the two defendants was blameworthy,
and agreed to a compromise. . . . A compromise .ver-
dict for $1,000 does not do justice to the decedent."
. The first legislation in this State upon this subject
was in 1848, and the Act passed in that year appears
in the revision of the statutes for the following year
as follows: "Actions for injury to the person, whether
the same do or do not result in death, . . . shall sur-
vive to his executor or administrator; provided the
cause of action shall not have arisen more than one
year before the death of the deceased, and shall have
arisen since the 27th day of June, 1848." Revised
Statutes, 1849, p. 72, § 83. The statute was afterward
changed to read as follows: "All actions for injury

to the person, whether the same do or do not instantaneously or otherwise result in death, . . . shall survive to the executor or administrator." Revision of 1875, p. 422, § 9; Revision of 1888, § 1008. The statute appears in the Revision of 1902, § 1094, as follows: "The executor or administrator of any person whose death shall have been caused by negligence, may recover of the party legally in fault just damages, not exceeding five thousand dollars." In 1903 it was provided: "No cause or right of action shall be lost or destroyed by the death of any person, but shall survive in favor of or against the executor or administrator of said deceased person. . . . In all actions surviving to or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise, such executor or administrator may recover from the party legally in fault for such injuries just damages not exceeding five thousand dollars; provided, that no action shall be brought upon this statute but within one year from the neglect complained of." Public Acts of 1903, Chap. 103, §§ 1 and 4. In 1911 the statute was re-enacted, with a maximum of recovery fixed at $10,000 in place of $5,000. Public Acts of 1911, Chap. 242, § 1. In 1913, it was made to read as follows: "In all actions surviving to or brought by any executor or administrator for injuries resulting in death, whether instantaneous or otherwise, or whether caused by the negligence of the defendant or by his willful, malicious, or felonious act, such executor or administrator may recover from the party legally at fault for such injuries, just damages not exceeding ten thousand dollars, provided no action shall be brought under this act but within one year from the neglect complained of or from the commission of said willful, malicious, or felonious act."

Public Acts of 1913, Chap. 148, § 1. It has so re-
mained, in General Statutes, Revision of 1918, § 6137.

Other legislation of this character in this State, was
an Act passed in 1853, giving a right of recovery for
death caused by the negligence of a railroad company,
and that statute prescribed a maximum recovery of
$5,000 and a minimum of $1,000. Public Acts of 1853,
Chap. 74. This statute was afterward consolidated
with others, and the minimum limitation was re-
moved. The meaning and purpose of this legislation
has been considered by this court on numerous occa-
sions, notably in the following cases: *Broughel* v.
*Southern New England Telephone Co.,* 73 Conn. 614,
48 Atl. 751; *McKiernan* v. *Lehmaier,* 85 Conn. 111, 81
Atl. 969, and *Lane* v. *United Electric L. & W. Co.,* 90
Conn. 35, 96 Atl. 155.

No claim is made that the jury mistook the law or
were swayed by passion or prejudice. The view ex-
pressed by the trial court, that the verdict may have
been the result of a disagreement as to the liability
of the respective defendants, does not seem to be based
upon any known circumstance, and appears to be only
speculative. In any event, it cannot be said to furnish
ground for setting aside the verdict. Nor do we find
any warrant for the view of the trial court that the leg-
islature never intended the damages in these cases to
be less than $1,000. We have heretofore pointed out
that the sum named in the statute as a maximum of
recovery is a limitation and not a measure of damages;
*McKiernan* v. *Lehmaier,* 85 Conn. 111, 117, 81 Atl.
969; and the same would be true of a minimum of
recovery, if such was prescribed by the statute. As
we have indicated, such a minimum limit was fixed
in the statute of 1853, and its subsequent removal by
the legislature forcibly suggests that thereafter there
was to be no limitation in that direction. It follows

that any amount, justified by the circumstances, up to $10,000, may now be properly assessed under the statute. Moreover, the court's conclusion that because the "mere loss of life in itself in such cases entitles the decedent's estate to recover something, it is manifest that a verdict for $1,000 is inadequate," is in the nature of a *non sequitur.* The question here presented is not whether this court or the trial court would have come to the same conclusion the jury reached, but whether the jury was within its proper province and within the law in concluding that $1,000 was "just damages" under the particular circumstances of this case.

Considering this question in an earlier case, where $1,750 had been awarded for the death of a policeman, we said: "The problem of estimating damages for the loss of his life with any exactness is, as in every such case—and in many another where damages are sought—one beset with insurmountable difficulties. The law, nevertheless, undertakes to do justice as best it can, although of necessity crudely. The solution of the problem is left to the trier's good judgment. Such problems are peculiarly appropriate for a jury's deliberation in which twelve individual judgments are set to the task of estimation, and the verdict is a composite of the views of the twelve. The fairness of the resultant award cannot well be subjected to any recognized test, or measured by any certain standard. It may be so palpably inadequate or excessive as to indicate that it was influenced by improper considerations, and in such case should be set aside; and if these indications are too plain to be mistaken the appellate court should not hesitate to remedy the trial court's failure to do its duty. But where the matter is submitted to a jury of twelve men to exercise their combined judgment, wide latitude must be accorded to them, and their verdict should not be disturbed for difference in judg-

ment, even if considerable. . . . We are, therefore, not prepared to say, in view of the uncertainties attending the subject and the absence of a definite standard of measurement, that the verdict is so inadequate that the trial court erred in not setting it aside." *Lane v. United Electric L. & W. Co.*, 90 Conn. 35, 37, 86 Atl. 155.

In *O'Connor v. Zavaritis*, 95 Conn. 111, 118, 110 Atl. 878, we repeated: "We know of no standard by the application of which we should feel justified in saying that the verdict was excessive." See also *McKiernan v. Lehmaier*, 85 Conn. 111, 118, 81 Atl. 969, and *McCann v. McGuire*, 83 Conn. 445, 447, 76 Atl. 1003. This position is in accord with that generally taken in other jurisdictions. In a note upon this point in L.R.A. 1916C, pp. 810, 811, 813, 815, it is said: "It is not to be overlooked that the pecuniary injuries resulting . . . from the death . . . through the negligence of another, for which damages may be recovered, are difficult of precise proof and in a measure are uncertain and problematical, and what would be a proper compensation for the pecuniary injuries suffered must always, on such proof as can be made, be left to the sound judgment of the jury. In assessing the damages in such cases, the jury are entitled to use their own experience and observation in connection with such light as the evidence may reflect upon the subject, and approximate as near as possible the pecuniary loss, for the matter is necessarily largely left to their sound sense, judgment, and discretion. . . . Where the question is presented to the court as to whether or not it should interfere with the jury's verdict, its solution does not depend upon whether its judgment as to the amount of damages awarded coincides with that of the jury, and the mere fact that the court, had it been acting as a jury in the particular

case, would have assessed the damages at a larger or smaller amount than did the jury, in and of itself, is no ground for interfering with the verdict of the jury. . . . The amount fixed by the jury must convince the mind that it is unjust and entirely disproportionate to the loss suffered, or in fixing the amount there must have been a clear abuse of discretion on the part of the jury, or an improper exercise by them of their discretion, or the court will not interfere. . . . It has been held that the abuse of their discretion by the jury must have been palpable in order to justify interference by the court."

The verdict is a small one, probably smaller than would have been awarded had the case been tried to the court, and were this a sufficient warrant for setting it aside, we would concur in doing so; but where a jury of twelve fair-minded men, with the witnesses and the evidence all before them and under proper instructions from the court as to the law, reach a deliberate conclusion of this character, it would be an unjustifiable interference with their prerogative to reverse it, unless the error was palpable, or unless we could find some misapprehension of duty, some improper motive, prejudice or bias, which we were satisfied could have warped their judgment. Moreover, we cannot say that the judgment of twelve such men, so exercised, is not more likely to be "just damages" than our own judgment, or the single judgment of the trial court.

An important element of the problem before the jury was the money value of the life to the estate of the decedent—not simply what he could have earned if he had lived for the period of expectancy—but the extent to which the estate would have benefited. We have said: "This legislation was also, and mainly, designed to make some compensation in money for

mere loss of life, which compensation, as part of the estate of the injured party, should go to certain designated persons; not full compensation of this kind for such a consequence, but 'just damages' not exceeding a prescribed amount.  In this last aspect of it, this legislation plainly contemplates that the extent of such loss may be greater in one case than another; or, to put this in a different way, that the value of the life to the injured party—or, what is the same thing, to his estate—in terms of money may be greater in one case than in another. . . . The loss of life is not to be estimated from the standpoint of the statutory beneficiaries; their loss, if any, arising from the death, cannot be taken into account." *Broughel* v. *Southern New England Telephone Co.,* 73 Conn. 614, 619, 48 Atl. 751.

One of the objects of the statute is to compensate the estate of the deceased for the loss which his death occasioned, and though this is not necessarily, in all cases, the only element, the circumstances of the present case point to this as at least the principal element. *Broughel* v. *Southern New England Telephone Co.,* 73 Conn. 614, 48 Atl. 751.

What, then, was the money value of the life to the estate?  Manifestly it was not merely what the decedent could have earned, but it was the extent to which the estate would have benefited by his continued life.  There was nothing before the jury to show how far, if at all, the estate had benefited to the time of the death; so this could not be used as a basis upon which to estimate the benefit for the future.

There was no certainty of future earnings, of work, of health, or even life, and this was a fact to be considered.  All these uncertainties made the question, like that of money compensation for pain and suffering, impossible of solution by any method of actual

computation, but rather one for a sound discretion to be exercised in the light of the jury's experience and general good judgment. Based upon these considerations, we are constrained to hold that the action of the trial court was erroneous.

There is error, and the cause is remanded with direction to enter judgment upon the verdict.

In this opinion CURTIS and MALTBIE, Js., concurred.

WHEELER, C. J. (dissenting). In my opinion *Judge Marvin* was right in setting the verdict aside for the reason that $1,000 was not a just award of damages, but palpably inadequate damages, for the death of plaintiff's decedent, who was a man forty-nine years of age, having an expectancy of life of 21.95 years, and in good bodily health, who was by trade an expert wire drawer, and in twenty years had lost no time with his employer, the Chase Metal Works, serving the last ten years as a subforeman and earning $42 a week, and in the last year of his life $2,100.

In this opinion HINMAN, J., concurred.