MARY F. FARRELL, ADMINISTRATRIX (ESTATE OF MAURICE F. FARRELL) *v.* L. G. DeFELICE & SON, INC.

MALTBIE, C. J. BROWN, JENNINGS, ELLS and DICKENSON, Js.

82

Argued March 7—decided May 3, 1945.

*Roger W. Davis,* for the appellant (defendant).

*Edwin M. Ryan,* with whom was *Charles Stroh,* for the appellee (plaintiff).

MALTBIE, C. J.  The plaintiff's intestate, an inspector for the state highway department, died as the result of being struck by a portion of a paving machine in use by the defendant in constructing a state highway. In this action the plaintiff seeks damages for his death, claiming that it was due to the defendant's negligence. The jury found the issues for the plaintiff and awarded damages in the amount of $10,000. The defendant has appealed, and one of its claims is that the trial court erred in denying its motion to set the verdict aside as against the evidence and as excessive. We shall first discuss this ruling.

The jury reasonably could have found the following facts: The defendant was engaged in laying a strip of concrete as a part of a state highway. For that purpose it was using a paving machine, or paver. This consisted of a "skip" at the front, upon which the material to be mixed to form the concrete was deposited by trucks, two large drums for mixing the concrete, into the first of which the material flowed when the skip was raised into a vertical position, and a boom which projected from the rear over steel forms marking the edge of the strip under construction and by means of which the concrete was carried in buckets until it was dumped between them. The skip was constructed of heavy metal in the general shape of a flat scoop and weighed several tons; it was some fifteen to eighteen feet long and about nine feet wide. When in place to receive material its outer edge was on the ground, but, when the material had been deposited on it, it pivoted upon a rod at the inner end until it was in a vertical position. On each side of it a three-inch iron pipe twenty-eight inches above the ground projected from the paver as a guardrail; these rails extended almost to the outer edge of the skip when it rested on the ground; but as that outer edge described

its arc when the skip was raised it extended for a portion of the distance beyond the end of the rails. The operator of the paver, who controlled the movement of the skip, sat in a position where he had no view of the space between the paver and the forms and that between the forms for a considerable distance opposite and ahead of it. His operation of the machinery was assisted and somewhat directed by a "batch boy" whose principal job was to help in unloading material from the trucks onto the skip, but whose duty it was also to watch the skip in order to protect workmen on the job. The paver moved along parallel to the forms for the concrete at a distance of some six or eight feet from the nearest. A "fine grader" rested on the forms; it was the function of this machine to grade the ground to the requisite depth between them; and a part of it projected four and one-half feet beyond the form nearest the paver. Ordinarily the paver and the grader operated at a considerable distance from each other, but at the time of the accident, because the end of the particular strip of concrete being worked upon had been nearly reached, they were quite close together. There was in fact a distance only of some four or five feet between the projecting part of the grader and the nearest part of the paver. A truck waiting to discharge material upon the skip was standing with its rear toward it, only six or seven feet away.

Plaintiff's intestate came to the job to measure the depth between the forms to see that there would be a proper amount of concrete laid. He left his car and passed behind the paver, close to its operator, who was in his place upon it. With another representative of the highway department, he ran a string across the top of the forms and, standing between them, took the measurements. While he was doing this, the drums of the paver continued to revolve, but the skip was

held in a vertical position. When he had finished taking the measurements, he started in a diagonal direction toward the front of the paver, crossing the form nearest it and proceeding between it and the form, evidently intending to pass between the paver and the grader and across in front of the former to reach his car parked on the farther side of it. When he was about opposite the middle of the paver, the skip began to descend. At the same time, at the signal of the batch boy, the truck began to back toward it. The boy, seeing the plaintiff's intestate proceeding toward the front of the paver, shouted to him, "Look out." He was then some six or seven feet from the end of the nearest guardrail. Startled by the shout, he turned his head toward the paver and, looking up in an apparent effort to discover the source of the danger, started quickly forward. He came slightly into contact with the projecting part of the grader, lost his balance and, staggering back two or three steps, came between the ends of the guardrails and was struck by the descending skip.

When the skip began to descend, plaintiff's intestate, outside the guardrails, was not in a position of any danger, but he might have come into one if he had continued through the narrow opening between the paver and the grader and, turning to cross in front of the former, had passed too close to it or had been caught between the skip and the backing truck. Had the machinery remained stationary, he could have proceeded without danger. The jury could well have found that his injury was caused by the starting into motion of the skip and the backing of the truck, without notice to him, while he was in a position where, if he proceeded, he was likely to come into peril, coupled with fright caused by the sudden loud shout of the batch boy to "look out." They could reasonably have found that

the defendant, through its employees, failed to exercise proper care not to subject him to danger while he was leaving the place where he had been working. They could also have concluded that he was not guilty of contributory negligence in coming into contact with the projecting part of the grader, startled as he was and looking in the opposite direction and upward in the effort to discover the source of danger. His conduct could have been found to be the involuntary result of sudden fright, and so not negligent. *Koskoff* v. *Goldman,* 86 Conn. 415, 420, 85 Atl. 588; *Jacobsen* v. *Cummings,* 318 Ill. App. 464, 471, 48 N. E. (2d) 603; and see *French* v. *Mertz Co.,* 116 Conn. 18, 20, 163 Atl. 457.

Under our law, in an action by an administrator or executor to recover for injuries to a decedent, the damages may properly include compensation for his pain and suffering before his death, and medical, surgical and hospital bills, but not funeral expenses and like charges on the estate. *Reynolds* v. *Maisto,* 113 Conn. 405, 406, 155 Atl. 504; *Bunnell* v. *Waterbury Hospital,* 103 Conn. 520, 529, 131 Atl. 501. The principal element of damages is ordinarily the economic loss to the estate of the decedent due to his untimely death. *White* v. *L. Bernstein & Sons, Inc.,* 123 Conn. 300, 302, 194 Atl. 723; *Ratushny* v. *Punch,* 106 Conn. 329, 335, 138 Atl. 220; *Broughel* v. *Southern New England Telephone Co.,* 73 Conn. 614, 620, 48 Atl. 751. Damages of the latter nature are peculiarly difficult to fix with any degree of certainty, and the amount of the award must be left largely to the determination of the jury. In this case the majority of the court, while deeming that the amount of damages awarded is generous, are of the opinion that they are not so excessive that the trial court should have granted the motion to set the verdict aside. There is no error in the denial of that motion.

At the beginning of the trial, defendant's counsel presented to the clerk a list of eight jurymen in attendance, to be challenged in the order in which the names appeared on the list, if they should be drawn to form the panel for the trial of the case, until the four challenges allowed him by the statute had been exhausted. The clerk refused to accept a list containing more than four names of jurors as challenged, and the trial court sustained his action in so doing. The defendant claims that this was error. While § 5573 of the General Statutes provides that the clerk of the court, in impaneling the jury for the trial of each cause, shall, when more than twelve jurors are in attendance, designate by lot those who shall compose the panel, and while § 5577 provides that on the trial of any civil action, each party may challenge peremptorily four jurors, there is no provision in the statutes or rules of court determining how the right may be exercised. We are not called upon to determine whether it is proper practice to require a party, before any names are drawn from the jury box by the clerk, to file the names of members of the jury, not exceeding four, to be peremptorily challenged. In this case it does not appear that any juryman was finally sworn to try the case who was on the list given the clerk by the defendant's counsel for the purpose of peremptory challenge, nor did the defendant, after the names of twelve jurors had been drawn to constitute the panel for the trial of the case, seek to challenge any of them. We cannot hold that the defendant was harmed by the ruling of the trial court.

The complaint in this action was dated August 17, 1942, and various pleadings were filed until the parties were at issue. The case came to trial in October, 1943. Just before and at the opening of the trial, defendant's counsel asked permission to amend the answer by filing certain special defenses. The trial court stated that,

while it was disposed to give parties every reasonable opportunity to file amendments, the opposing party must be allowed time, if necessary, to examine into any new facts pleaded, and that, as the offer of the amendment came at the very beginning of the trial, the court should examine the proposed pleading to see if, as matter of law, there was any substance to it; and it held that there was no merit in law to the proposed defenses and refused to permit the amendment to be filed. The proposed pleading, while divided into three special defenses, actually set up only two. One was that, as the defendant was engaged in constructing a highway for the state, the same immunity from liability for negligence would attach as if a municipal agency was itself doing the work; and the other was that there could be no liability to the plaintiff, because the section of the highway under construction was legally closed to traffic by reason of signs erected under the provisions of § 1513 of the General Statutes.

We have expressly held that municipal immunity from damages resulting from negligence is not a defense to an agent of a municipality engaged in carrying on its governmental work; *Voltz* v. *Orange Volunteer Fire Assn., Inc.,* 118 Conn. 307, 310, 172 Atl. 220; and this would be a fortiori true as regards a contractor engaged in such work. *Whitla* v. *Ippolito,* 102 N. J. L. 354, 358, 131 Atl. 873; *Drake* v. *Asheville,* 194 N. C. 6, 138 S. E. 343; 6 McQuillin, Municipal Corporations (Rev. Ed.), § 2833; and see *DeCapua* v. *New Haven,* 126 Conn. 558, 13 Atl. (2d) 581. Section 1513 of the General Statutes authorizes the state highway commissioner to close or restrict traffic over any section of a trunk-line or state-aid highway by notices posted at each end and provides that any person using a highway so posted does so at his own risk. In *Belhumuer* v. *Bristol,* 121 Conn. 475, 478, 185 Atl. 421, we stated

the purpose of the statute: "The State might, where construction, reconstruction or repairs are necessary upon a highway, entirely close it to traffic. For the convenience of the public, the statutes make provision by which the highway commissioner may still permit persons desiring to do so to use the highway, without liability being incurred for injuries due to defects in it." See *McManus* v. *Jarvis*, 128 Conn. 707, 22 Atl. (2d) 857. The law is plainly a limitation upon the liability which might be incurred to travelers on a state highway, as was the plaintiff in the case last cited, and it has no application to an injury suffered by one whose duties required him to be upon a highway in aid of work being done in its construction, reconstruction or repair. The trial court correctly held that the defenses sought to be injected into the case were without merit. The situation before the court was not like that in *Smith* v. *Furness*, 117 Conn. 97, 99, 166 Atl. 759, in that here the amendment was offered on the very eve of the trial and there was no opportunity to test its legal sufficiency by demurrer, unless the trial were to be postponed. The trial court did not abuse its discretion in refusing the defendant permission to file the amendment.

The answer of the defendant contained a special defense alleging that it was not liable to a suit at law because it was a contractor under the state under such circumstances that the state was the principal employer and would be liable by virtue of § 5230 to pay workmen's compensation to employees of the defendant for injuries arising out of and in the course of the work, and the decedent was also an employee of the state of Connecticut. We have held that an employee of a contractor cannot sue the principal at common law when the circumstances of the injury are such that the employee would have a right to recover workmen's

compensation from the principal. *Bogoratt* v. *Pratt & Whitney Aircraft Co.*, 114 Conn. 126, 130, 157 Atl. 860; *Hoard* v. *Sears Roebuck & Co., Inc.*, 122 Conn. 185, 187, 188 Atl. 269; *Buytkus* v. *Second National Bank*, 127 Conn. 316, 319, 16 Atl. (2d) 579. In the first of these cases we recognized that our decision was contrary to that which had been reached in cases in other states, although we noted the fact that those cases were decided under workmen's compensation laws that materially differed from ours. See note, 151 A. L. R. 1359. In *Bogoratt* v. *Pratt & Whitney Aircraft Co.*, supra, 131, we pointed out that under our law whenever an injured employee of a subcontractor receives a compensable injury he may pursue his remedy against his immediate employer or any one or more principal employers as defined in the act or against all in one proceeding, and that where there is an original contractor and a consecutive chain of subcontractors down to the workman receiving the injury, each contractor and his immediate employer is a principal employer as to the injured workman; and we quoted a Massachusetts decision (p. 133) to the effect that it was undoubtedly the intention of the legislature to take away from employees subject to the act all other remedies which they had against their employers for injuries within its terms. In short, we have interpreted our act as meaning that the right to recover at common law for injuries is replaced by provisions of the compensation act just as far as the latter afford a remedy. Upon that basis, in *Wells* v. *Lavitt*, 115 Conn. 117, 122, 160 Atl. 617, we held it not to be a defense to common-law liability that the defendant was an agent of the plaintiff's employer, from whom the plaintiff was entitled to claim workmen's compensation; and we pointed out that, while the plaintiff and the defendant were fellow employees, there did not exist between them any "mu-

tual relation of employer and employee" such as would exempt the defendant from liability outside the terms of the act. The defendant now asks us to overrule that decision upon the strength of certain Massachusetts cases it cites. The decisions in that state are, however, governed by peculiar provisions in their act which are greatly at variance with our own in this respect, and there is no basis upon which we could arrive at a like conclusion, by a method which Justice Qua refers to as a "somewhat elaborate line of reasoning." *Carlson* v. *Dowgielewicz,* 304 Mass. 560, 562, 24 N. E. (2d) 538.

The only remaining assignments of error are in two rulings upon evidence. One involves the exclusion of a question, while the defendant was cross-examining a witness called by the plaintiff, asking whether the witness knew of any reason why plaintiff's intestate should not have returned to his car by taking the same course followed when he came to the job, that is by passing back of the paver. The trial court excluded the question upon the ground that it involved a mental operation of the deceased. Whether or not that was a sound ground, the exclusion of the question cannot amount to harmful error, because, even though there was no reason why the deceased should not have returned to his car by passing back of the paver, the fact that he chose to go toward the front of the paver, in the absence of any apparent danger at the time he started, could not be material in charging him with contributory negligence. *Gibson* v. *Hoppman,* 108 Conn. 401, 408, 143 Atl. 635. The other question the exclusion of which is claimed as error was asked of an expert medical witness called by the defendant, the substance of which was, could a blow otherwise than on the shoulder have caused the compressed fracture of the vertebra which, it was undisputed, occurred in

this case. As there was no dispute that plaintiff's intestate was in fact struck by the skip as it descended and that he did suffer a compressed fracture of the vertebra, in the view we take of the case the exclusion of the question could not have been harmful to the defendant.

There is no error.

In this opinion the other judges concurred.