FANNIE ROSE, as Administratrix of the Estate of MORRIS ROSE, Deceased, Respondent, *v.* HARRY BALFE, Appellant.

Negligence — motor vehicles — presumptions from prima facie case — owner of automobile not liable for death of pedestrian struck and killed by his automobile when being used by his chauffeur without his knowledge or consent and contrary to his express orders.

1. The presumption of the liability of a defendant growing out of a *prima facie* case continues only so long as there is no substantial evidence to the contrary. When that is offered, the presumption disappears, and unless met by further proof there is nothing to justify a finding based solely thereon.

2. Where a chauffeur after finishing his day's work for the defendant and without his knowledge or consent and in violation of specific orders to the contrary took defendant's automobile from the garage, where it had been placed in " dead storage " on being returned from a repair shop, for the purpose, as the chauffeur testified, of trying out, testing and adjusting the car for his own benefit although he was not employed as a mechanician and had no authority to repair the car, and while so operating the car struck plaintiff's intestate, causing injuries from which he died, the defendant is not liable. It was error for the trial court to send the case to the jury to determine whether the chauffeur was testing the car or using it for some other purpose, with instructions that " if you find that he was testing the car, it is for you to decide whether that act of testing the car was a part of his duties in the scope of his employment for which he was paid by the defendant."

3. It was error also for the court to refuse to charge " that if the chauffeur took the car against express orders and without the permission, knowledge or consent of defendant, then the relation of master and servant was suspended for the time being and the defendant cannot be held liable for any accident while such relation was suspended, and further that the car being in dead storage and the chauffeur taking it to test against the express orders of the defendant, the defendant is not liable, although the testing of the car might conceivably be to his advantage."

*Rose* v. *Balfe,* 177 App. Div. 907, reversed.

(Argued May 6, 1918; decided May 28, 1918.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 13, 1917, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George L. Ingraham* and *Carl Ehlermann, Jr.,* for appellant. It was error to deny the motion for a direction of a verdict at the end of the whole case, as there was no evidence to sustain a finding that the driver of the car was at the time of the accident acting within the scope of his employment, or that his negligence can be imputed to the defendant. (*Carlisle* v. *Norris,* 215 N. Y. 400; *Reilly* v. *Connable,* 214 N. Y. 586; *Steffen* v. *McNaughton,* 142 Wis. 49; *Ferris* v. *Sterling,* 214 N. Y. 249; *Hartnett* v. *Gryzmish,* 218 Mass. 258; *Potts* v. *Pardee,* 220 N. Y. 431; *Long* v. *Richmond,* 68 App. Div. 466; 175 N. Y. 495; *Stewart* v. *Baruch,* 103 App. Div. 577; *Macechko* v. *Bowen Mfg. Co.,* 179 App. Div. 573.) The court erred in its charge to the jury and in the refusal of requests to charge, which requires a new trial. (2 Mechem on Agency, § 1879; *Reilly* v. *Connable,* 214 N. Y. 586; *Macechko* v. *Bowen Mfg. Co.,* 179 App. Div. 573; *De Long* v. *Krebs,* 1 Cal. I. A. C. Dec. 592; *Reimers* v. *Proctor Publishing Co.,* 85 N. J. L. 441; *Barnes* v. *Nunnery Colliery Co., Ltd.,* [1912] A. C. 44; Honnold Workmen's Compensation, 359; *Kidd* v. *N. Y. C. & H. R. R. R. Co.,* 218 N. Y. 313.)

*William M. K. Olcott, Emil E. Fuchs* and *T. B. Chancellor* for respondent. There was evidence which justified the finding by the jury that defendant's chauffeur, at the time of the accident, was acting in the course and within the scope of his employment. (*Ferris* v. *Sterling,* 214 N. Y. 249; *McCann* v. *Davidson,* 145 App.

Div. 522; *Shamp* v. *Lambert*, 142 Mo. App. 567; *Rounds* v. *D., L. & W. R. R. Co.*, 120 N. Y. 117; *Dwinelle* v. *N. Y. C. & H. R. R. R. Co.*, 64 N. Y. 129; *Cox Shoe Mfg. Co.* v. *Gorsline*, 63 App. Div. 517; *Quinn* v. *Power*, 87 N. Y. 535; *Jones* v. *Weigand*, 134 App. Div. 644; *Barry* v. *Union Ry. Co.*, 105 App. Div. 520; *Williams* v. *Koehler & Co.*, 41 App. Div. 426; *Geraty* v. *Nat. Ice Co.*, 16 App. Div. 174.) The trial court did not err in its charge to the jury nor in its refusal to charge as requested by the defendant. (*Cosgrove* v. *Ogden*, 49 N. Y. 255; *Courtney* v. *Baker*, 60 N. Y. 1; *Riegler* v. *Tribune Assn.*, 40 App. Div. 324; 167 N. Y. 542; *McCauley* v. *Hutkoff*, 20 Misc. Rep. 97; *Hardegg* v. *Willards*, 12 Misc. Rep. 17; *Keep* v. *Walsh*, 17 App. Div. 104.)

Hogan, J. About eight o'clock on the night of March 24th, 1914, plaintiff's intestate was struck by an automobile owned by the defendant, which was at the time being driven by one Drenning, a chauffeur employed by defendant. The accident happened on Eastern parkway, Brooklyn, at or near the junction of the parkway and St. John's place. The injuries received by the intestate resulted in his death.

Plaintiff recovered a verdict at the Trial Term and the judgment entered thereon was affirmed by the non-unanimous decision of the Appellate Division.

The complaint alleged that the defendant was the owner of an automobile bearing license number " N. Y. 21826," the automobile in question. The answer of the defendant admitted the ownership of such car by defendant. At the opening of the trial counsel for defendant made the following concession: " I will concede that the automobile concerned in this accident, which was owned by Mr. Balfe (defendant) caused the death of this man (the intestate) at the time and place set forth." The facts relating to the accident were then detailed by

witnesses on behalf of the plaintiff. The last witness called by plaintiff, before resting, was Drenning, the chauffeur, who testified he was employed by defendant and on the night in question he was driving the car owned by defendant, which car came into collision with the deceased.

Drenning, the chauffeur, called by plaintiff, was then examined as a witness on behalf of defendant. So far as his testimony relating to his employment and bearing upon the question of the responsibility of defendant for his act I deem it important to a determination of the questions presented upon this appeal to narrate the same.

He testified: " I had been a chauffeur for twelve years prior to March 24th, 1914. I was employed by the defendant nearly three years from August, 1911, to July, 1914. On the night in question, I took the automobile, which was a Peerless seven passenger touring car, from the garage, located Number 1820 Halsey Street, Brooklyn, and accompanied by a man named Anthony, who was seated at my side, drove to the point where the collision occurred. The defendant owned a second car described as ' a little S. G. V. town car.' On that day, March 24th, I took defendant to his place of business in New York and went and got him in the evening and took him to his home in Brooklyn, arriving there about half past six or a quarter of seven. His home was distant from the garage about one mile and a third. Defendant didn't give me any orders for the rest of the evening. I had not driven defendant in the Peerless car since the previous fall, about four months, because just as soon as it got cold weather we used the little car. During that time the Peerless car had been in the garage, save for a period of about three weeks when it was in the shop in New York. I had orders from defendant the day I got the Peerless car in New

York to bring it to the garage and put it in ' dead storage ' — that means it is laid up there, that it is not to be used. During my employment I was instructed by defendant not to take out any of the cars without his permission. I did not ask defendant· for permission to take out the Peerless car on the night of the accident, nor did I tell him I was going to take out the car."

On cross-examination the witness testified: " I was not travelling on my employer's business that night; I was not travelling for my own pleasure. I was travelling to adjust the car for my own benefit. I wanted the car in perfect condition and running quiet. Q. And your employer didn't? . A. Certainly, he wanted it, of course it would be to my benefit for to keep it running quiet. Q. Wouldn't it be to your employer's benefit to have the car adjusted? A. Certainly. Before the Coroner I testified I was trying the car out. I had never been asked to try it out; I still say so. Q. In the interest of Mr. Balfe you tried the car out? A. Yes, I was testing the car out for a slipping clutch and noisy valves. The slipping clutch had been relined and had not been properly adjusted before. I found it in order that night. Defendant had two cars, the S. G. V. was a limousine town car; I was the only one who ran the two cars. I always drove the Peerless car when it was used either in or out of New York. I keyed it up when it needed keying up. Defendant made it part of my duty to keep the cars in order. I understood that included testing them when they needed testing."

Re-direct examination: " Defendant never gave me any direct orders to repair the cars or either one of them. When the cars went out of order, I reported to defendant and took them to the shop."

Re-cross examination: " I was employed by defendant as a chauffeur, not as a chauffeur and mechanician. I determined when the cars was out of order and needed

repairs. Mr. Balfe never came to the garage in the city where the cars were kept."

In reply to the court, he testified: " Defendant never saw me tune up the cars or test them. He had seen me cleaning up in the country. The only trouble on the road was tire trouble; the cars did not break down."

The defendant testified with reference to instructions given by him to Drenning forbidding him to take the car out without his, defendant's, permission, the placing of the car in " dead storage " the preceding fall, his orders to Drenning some weeks before the accident to take the car to the shop and later to obtain the same and put it in his garage and leave it there; that Drenning had positive instructions not to take any cars out of the garage without his direction or an order from his family; as to the Peerless car not to touch it, and as to the non-use of the Peerless car he substantially agreed with the witness Drenning.

The foreman from the garage called as a witness on behalf of defendant produced the record book of the garage kept by him, which disclosed that the Peerless car owned by defendant came into the garage March 14th (when returned from the shop), ten days prior to the accident, and was placed in " dead storage;" that it was taken out on the 24th of March, the day of the accident.

At the close of plaintiff's case, the evidence tending to disclose liability on the part of the defendant was limited to the testimony of Drenning that at the time of the accident he was an employee of defendant and driving the car owned by defendant. Such fact was *prima facie* evidence of the responsibility of defendant. (*Ferris* v. *Sterling*, 214 N. Y. 249.) The presumption growing out of a *prima facie* case, however, continues only so long as there is no substantial evidence to the contrary. When that is offered, the presumption dis-

appears, and unless met by further proof there is nothing to justify a finding based solely thereon. (*Potts* v. *Pardee*, 220 N. Y. 431, and cases cited.)

In my opinion the presumption arising from ownership of the automobile by the defendant was overcome by substantial evidence to the contrary, which the plaintiff failed to rebut by further proof and there was no evidence to justify a recovery by the plaintiff in this case.

Up to the evening of the accident the Peerless car had not for months been used by defendant, but by his direction had been placed in "dead storage," not to be used. On the evening in question Drenning, without the knowledge or consent of defendant and in direct violation of specific and direct orders to the contrary given to him by the defendant, took the car out and an unfortunate result followed. After Drenning left the defendant at his home at half past six o'clock, and defendant failed to give him further orders for the night, Drenning was free until the following morning, when he should return as usual to take defendant to his place of business in New York. His labor for the day was ended and instead of going to his home or about his business, giving to his evidence inferences most favorable to plaintiff, he assumed to substitute his individual judgment for the judgment of his master and to determine when the car should be removed from "dead storage" and in what manner and place and at what time the car should be tested, thereby denying to his master the exercise of a right and privilege which the latter had expressly reserved to himself, which act on the part of Drenning was not only in violation of specific orders that the car was not to be taken out of storage, used for any purpose or removed from the garage, but at absolute variance with his conduct on all former occasions. Prior to the evening of the accident whenever Drenning believed or concluded that a car was out of

repair or required special attention he reported the fact to defendant and received instructions in reference to the same and obeyed them. On the evening in question he absolutely ignored and disobeyed such direction. The fact that defendant did not confer upon Drenning express authority to take out the car or test the same is too apparent to require discussion. Drenning was not clothed with implied authority to remove the car from storage or test the same. Under the circumstances of this case implied authority did not exist to authorize an act expressly prohibited.

To justify the finding in the present case that the act of Drenning on the evening in question was one in the course of his employment, would establish that a master is powerless to direct and control the conduct of his servant, to prescribe the mode and manner in which his work shall be done and direct when, how and where his property shall be used, that the individual wish or mental operations of the servant are paramount to the express orders of the master. We are not prepared to assent to the establishment of such proposition. The present case illustrates the evil results which might result therefrom. The servant Drenning by his conduct subjected himself to a charge of larceny from his master. (Penal Law, § 1293a.) He has been held in the Coroner's Court upon a charge of manslaughter. Most serious of all, his act caused the death of his fellow-man, and while that result is to be deplored, the defendant herein cannot upon the evidence in this case be held responsible for the act of Drenning.

The trial justice charged the jury that it was for them to determine whether on the evening of the accident the chauffeur was testing that car or whether he was engaged on some other errand or purpose, and " if you find that he was testing the car, it is for you to decide whether that act of testing the car was a part of his

duties in the scope of his employment for which he was paid by the defendant."

The court refused to charge that if the chauffeur took the car against the express orders and without permission, knowledge or consent of defendant, then the relation of master and servant was suspended for the time being and the defendant cannot be held liable for any accident while such relation was suspended, and further that the car being in " dead storage " and the chauffeur taking it to test against the express orders of the defendant, the defendant is not liable, although the testing of the car might conceivably be to his advantage.

The court did charge that beyond the scope of his employment the servant is as much a stranger to his master as any third person, and if any third person had taken the automobile out to test it the defendant would not be liable. No question can be raised as to the latter part of the charge. As to the first proposition charged, the refusal to charge as requested and some additional requests to charge, unnecessary to detail, to which exception was taken, in view of what has been written in this case, we think error was committed.

The judgment of the Appellate Division should be reversed and a new trial granted, with costs in both courts to appellant to abide the event.

Hiscock, Ch. J., Chase, Cardozo, Pound, McLaughlin and Andrews, JJ., concur.

Judgment reversed, etc.