# CANNON v. GOODYEAR TIRE & RUBBER CO. OF CALIFORNIA.

No. 3739. Decided April 21, 1922. Rehearing denied July 1, 1922.
(208 Pac. 519.)

MASTER AND SERVANT—NEGLIGENT TRUCK DRIVER HELD NOT WITHIN SCOPE OF EMPLOYMENT. Driver of defendant's delivery truck, after having made the last delivery for the day drove the truck to his home and used it in moving furniture for himself, and subsequently when driving the truck to the garage of the employer, ran into and injured plaintiff. *Held*, that driver was not acting within the scope of his employment, and that the employer was not liable.[1]

Appeal from District Court, Third District, Salt Lake County; *Wm. M. McCrea,* Judge.

Action by William Karl Cannon against the Goodyear Tire & Rubber Company of California. From a judgment for defendant, plaintiff appeals.

AFFIRMED.

*Hurd & Hurd,* of Salt Lake City, for appellant.

*Frank J. Gustin* and *Rich, Rich & Roberts,* all of Salt Lake City, for respondent.

THURMAN, J.

Plaintiff brought this action to recover damages for personal injuries sustained by him in an automobile accident occurring on one of the streets of Salt Lake City December 27, 1919. It is alleged in the complaint that on the day last mentioned plaintiff was driving a Ford truck and stopped at a point on South Temple and Second West streets in said

---

[1] *Ferguson* v. *Reynolds,* 52 Utah, 583, 176 Pac. 167.

city for the purpose of making certain repairs; that he
stopped a distance of about two feet from the south curb of
said South Temple street, and while so stopped for the pur-
pose aforesaid defendant, by its servant, Henry Kratzer, neg-
ligently, carelessly, and recklessly drove a large, heavy, and
powerful automobile truck belonging to defendant against
plaintiff's Ford truck with such force and violence as to cause
the same to be knocked, pushed, and driven against, upon,
and over the plaintiff, thereby inflicting upon him serious
injury to his damage in the sum of $20,000.

Defendant, answering the complaint, among other defenses,
alleges that the accident did not occur at a time when the
said Henry Kratzer was acting within the scope of his em-
ployment with the defendant, but at a time when he was en-
gaged in his own business.

The case was tried to a court and jury. At the conclusion
of the evidence defendant moved for a directed verdict chiefly
upon the ground that Henry Kratzer, the driver, was not
acting within the scope of his employment with the defend-
ant at the time of the accident. The court granted the mo-
tion. A verdict was rendered for defendant, and judgment
entered accordingly.

The order of the court directing a verdict for defendant is
assigned as error, and is the only question presented for our
determination.

The evidence is without substantial conflict to the effect
that on the day of the accident which resulted in the injuries
complained of by plaintiff Henry Kratzer was, and for some
months previous thereto had been, in the employment of the
defendant; that on the day in question his employment was
that of truck driver for the delivery of express matter, parcel
post packages, and freight, and for that purpose some weeks
before the accident he had been furnished by the defendant
with the truck driven by him at the time the accident oc-
curred. The hours of his employment during every day of
the week except Saturday and Sunday were from 8:30 a. m.
to 5:30 p. m., and on Saturday from 8:30 a. m. to 1 o'clock
p. m. from which hour until 8:30 a. m. on the Monday next

following his time was his own. The closing hours above mentioned were subject to a slight variation in order to finish the last trip of the day. The driver, Kratzer, was under general instructions to not use the truck except on business for the defendant company. On two or three occasions previously he had been given permission to use the truck for his own accommodation, but on the day of the accident no such permission had been given. There was also a standing instruction, of which Kratzer was cognizant, that at the conclusion of the last trip for the day the truck was to be immediately returned to the garage. The garage was situated between Main and West Temple streets on Second South street, while defendant's office and place of business was between Third and Fourth West on Second South, about four blocks west of the garage.

On Saturday, December 27, 1919, at 12:15 p. m. Kratzer started on his last trip for the day. The trip included the delivery of an express package at the Oregon Short Line depot on Third West and South Temple streets, and it is estimated by the stock clerk who kept the books and records for defendant that Kratzer would finish the trip about 1:10 p. m., and entry was made accordingly. Kratzer made the delivery of the express package at the depot as contemplated, but, instead of returning the truck to the garage immediately, pursuant to instructions, he drove from the depot to North Temple street; thence across the viaduct to Ninth West street; thence north to Fourth North street; thence west to Eleventh West street and spent the afternoon until about a quarter to 6 p. m. on business of his own, during which time he used the truck moving furniture for himself and spent the remainder of the time at his home assisting his wife in their household affairs. At a quarter to 6 he started with the truck in the direction of the garage and returned by way of the Oregon Short Line depot; thence east on South Temple street to a point just east of Second West street where the accident occurred.

Kratzer testified that his final duty on each day was to return the truck to the garage. He also testified that on the

day of the accident he quit the company's business at 1:30 p. m., and that the time from that hour until 8:30 a. m. the following Monday was his own.

The foregoing facts are clearly deducible from appellant's abstract of the evidence, and the abstract truthfully reflects the record.

It is conceded by appellant that Kratzer's time was his own on the day of the accident from the time of making his last delivery down to the hour when he started to return the truck to the garage, and especially down to the time when he passed the Short Line depot on the return trip, but it is earnestly contended that from that point on to the garage he was in the service of defendant, because his final duty to the defendant was to return the truck to the garage. In support of this contention many automobile accident cases involving the doctrine of respondeat superior are called to our attention. *Whimster* v. *Holmes,* 177 Mo. App. 130, 164 S. W. 236; *Samuels* v. *Hiawatha Holstein Dairy Co.,* 115 Wash. 343, 197 Pac. 24; *Dale* v. *Armstrong,* 107 Kan. 101, 190 Pac. 598; *Snyder* v. *Eriksen,* 109 Kan. 314, 198 Pac. 1080; *Ferguson* v. *Reynolds,* 52 Utah, 583, 176 Pac. 267; *McKiernam* v. *Lehmaier,* 85 Conn. 111, 81 Atl. 969; *Kneff* v. *Sanford,* 63 Wash. 503, 115 Pac. 1040; 26 Cyc. 1529-1535.

In *Whimster* v. *Holmes,* supra, it does not appear but that the accident occurred within the hours of the servant's employment. The defendant was held liable.

In *Samuels* v. *Hiawatha Holstein Dairy Co.,* supra, the evidence was conflicting, and consequently was a case for the jury. Besides this, the decision was controlled by a positive statute.

In *Dale* v. *Armstrong,* supra, the chauffeur of defendant deviated somewhat from his employment to do an errand for a third person. In answer to special interrogatories the jury found that at the time of the accident he was engaged in performing a special service required by his employer. Like the *Whimster* Case, the time of the accident appears to have been within the hours of his employment. A judgment for plaintiff was affirmed.

In *Snyder* v. *Eriksen,* supra, the servant of defendant was directed by his superior to take a motor truck and drive it home to get his dinner in order that he might sooner return and resume his regular employment. On his way to dinner, through his negligent driving, an accident occurred. Defendant held liable.

*Furguson* v. *Reynolds,* supra, has no application.

In *McKiernam* v. *Lehmaier,* supra, the first headnote reflects the opinion of the court as far as it concerns the question here:

"A chauffeur who, having taken his employer to the theater, and been told to be back there at a certain time, and then been loaned money by the employer for a hair cut, ran into a person when, after going the round of the barber shops, to find a barber at leisure, he was returning to the theater, was then acting within the scope of his employment."

In *Kneff* v. *Sanford,* supra, as indicating the point decided and the opinion of the court, we quote the first paragraph of the syllabus:

"An owner of automobiles for hire kept them standing in front of a hotel in charge of chauffeurs. A chauffeur while on duty took from the hotel a telephone girl working there to her home without collecting fare. On his return to the hotel the chauffeur injured a pedestrian. Held to prima facie show that the chauffeur acted within the scope of his employment at the time of the accident, and the owner was liable to the pedestrian for the injuries received."

It was held, however, in view of the evidence for the defendant, that the question was one for the jury.

Appellant also cites *Noblesville & E. G. R. Co.* v. *Gause,* 76 Ind. 142, 40 Am. Rep. 224, in which the evidence tended to show that a certain tollgate was at all times in charge of the tollgate keeper as the only officer and agent of the defendant company, but that he did not receive tolls after 9 o'clock p. m. It was held by the court that no inference should be drawn that he ceased to be an agent of the company after that hour.

It must be conceded that the foregoing cases as authority for appellant's contention are far from satisfactory. Many of them have no application at all to the case at bar, and none

of them are even remotely in point when we come to consider
the real crux of the question involved.

That it was the duty of Kratzer to return the truck to the
garage, even if it was done at a belated hour, is not and can-
not be a debatable question. It would have been his duty to
return it even if he had feloniously stolen, taken, and driven
it away. There is both a moral and a legal duty imposed
upon every man to restore to the owner property wrongfully
taken or withheld, and this duty is in no sense dependent
upon the relation of master and servant or of employer and
employé. Hence, when we speak of the duty of Kratzer to
return the truck to the garage, it signifies but little in the
instant case, unless from the nature of the case we can also
determine the character of the duty.    As further emphasiz-
ing the views of the writer, let us suppose that when Kratzer
made his last delivery for the day at the Short Line depot he
had immediately returned the truck to the garage in pursu-
ance of his employer's instructions.   Suppose further that
after returning the truck to the garage he had later called
for it and taken it away and had then done the very things
he did do, as detailed in the evidence.   In such case it could
not be consistently contended that in returning the truck
to the garage he was engaged in the business of the defend-
ant or acting within the scope of his employment.   That such
a contention could not be sustained by either reason or au-
thority seems to me to be beyond the possibility of rational
disputation.   It would not only be contrary to reason and
authority, but would also be the rankest kind of injustice
and oppression, to hold that returning the truck to the garage
in the case supposed was a service within the scope of
Kratzer's employment so as to render his employer respon-
sible for his negligence.  I see no difference in principle, as
far as the proposition of law is concerned, between the case
supposed and the case disclosed by the record.  In the one
case he wrongfully withheld possession of the truck after it
should have been returned to the garage; in the other he
wrongfully took it into his possession.  In either case he was
both morally and legally bound to return it, entirely inde-

pendent of any duty incident to his employment. In the course of this discussion the fact should be continually borne in mind that from 1:30 p. m. on the day of the accident until 8:30 a. m. on the Monday following Kratzer was complete master of his time and was in no sense subject to the defendant's direction or control. Whatever he did in such circumstances during said period of time certainly should not be attributed to his employer, who had no knowledge of what he was doing nor power to direct or control his conduct. This is the principal distinguishing feature between this case and the cases upon which appellant relies.

From the standpoint of reason alone, without reference to adjudicated cases in support of the views herein expressed, the court is of the opinion that the order of the trial court directing a verdict for the defendant was right and should be affirmed.

In view of the conclusion reached it is not necessary to review the cases relied on by respondent, practically all of which are more or less in point. We will cite the cases, however, for the benefit of those who may desire to further investigate the question. *Danforth* v. *Fisher*, 75 N. H. 411, 71 Atl. 535, 21 L. R. A. (N. S.) 93, 139 Am. St. Rep. 670; *Morier* v. *St. Paul Railroad*, 31 Minn. 351, 17 N. W. 952, 47 Am. Rep. 793; *Colwell* v. *Ætna Bottle & Stopper Co.*, 33 R. I. 531, 82 Atl. 388; *Howe* v. *Leighton*, 75 N. H. 601, 75 Atl. 102; *Rose* v. *Balfe*, 223 N. Y. 481, 119 N. E. 842 Ann. Cas. 1918D, 238; *Gousse* v. *Lowe*, 41 Cal. App. 715 at page 719, 183 Pac. 295, and cases cited on page 296; *Fleischner* v. *Durgin*, 207 Mass. 435, 93 N. E. 801, 33 L. R. A. (N. S.) 79, 20 Ann. Cas. 1291; *Reilly* v. *Conable*, 214 N. Y. 586, 108 N. E. 853, L. R. A. 1916A, 954, Ann. Cas. 1916A, 656.

In *Gousse* v. *Lowe*, supra, the court, at page 296 of 183 Pac. (41 Cal. App. 719), commenting on the proposition urged by appellant in the instant case, says:

"In a very few cases in other states when the tort occurred on the homeward journey of the disobedient servant the master has been held liable, but the great current of authority, in this country and in England, is against those isolated cases"—citing cases.

Appeal from Third District

The judgment of the trial court is affirmed at appellant's cost.

CORFMAN, C. J., and WEBER, GIDEON, and FRICK, JJ., concur.