[Civ. No. 6719. Second Appellate District, Division Two.—May 7, 1931.]

KATE McCAMMON, Respondent, v. WALTER E. EDMUNDS, Appellant.

George H. Moore for Appellant.

Duke Stone for Respondent.

ARCHBALD, J., *pro tem.*—The defendant Edmunds conducted a dental laboratory in the city of Los Angeles, where he manufactured false teeth, plates, etc., for dentists. Defendant Frederick W. Miner, nineteen years of age, had been employed by him for about a month to make deliveries on a motorcycle owned by Edmunds at the time of the accident which is the subject of this action. The father and mother of Miner, who signed their son's application for an operator's license, were also made defendants. The complaint prays damages for injuries alleged to have been due to the negligence of the defendant Frederick W. Miner while driving appellant's motorcycle. From a judgment in favor of plaintiff and against all defendants the defendant Edmunds has appealed.

The evidence shows that Miner was permitted by his employer to keep the motorcycle at his home and to ride it

to and from work. On the day of the accident he made his last delivery at about 5 P. M. and went home, taking dinner with his family and Russell Holt, a friend. Young Holt had left his Ford car to be repaired at a garage some blocks away, and about 7:50 P. M. the two boys, on the motorcycle, went to get the Ford, after which they started for an oil station at Alvarado and Temple Streets, each driving his respective vehicle. At such oil station Miner testified that he intended to change the front tire of his motorcycle to the rear wheel, because "the rear tire was worn down smooth". On the way the accident complained of happened.

The evidence shows without question that young Miner's hours of employment were from 8 A. M. to 5 P. M., with one hour off for lunch. It also shows without contradiction that appellant had instructed the boy that if anything went wrong with the machine to take it to the Harley Davidson Company to have it repaired. Defendant Edmunds testified in that regard: "Well, I would like to give you, in answer to that, the instructions I issued to the boy. It was very thoroughly understood that if I let the boy take the car home after the last delivery and use it to go to and from work, that he was not to use it after he got home. Q. For no other purpose? A. For no purposes whatever. Q. What were your instructions to the boy as to taking care of tires or where he should have them taken care of? A. At the Harley Davidson's, unless he got caught out with a puncture, and he was to go to the nearest place, if there was one handy." That evidence is not contradicted. Young Miner testified, also without contradiction. "Q. Just a moment. You testified, did you not, several times, that your repairs were to be made during business hours? A. Yes, sir, when the repairs were to be made. Q. (By Mr. Anderson.) Did you testify on your direct examination when I called you first that there was no particular time set for having repairs, no particular hours of the day set for repairs? A. Well there was—it would be from eight to five." The witness also testified that he used to clean and grease the machine at his home, but it does not appear that he was instructed so to do. Over the objection of appellant the boy was permitted to testify further that the motorcycle had a tendency to skid when the brakes were applied, on

account of the rear tire being smooth; that he had noticed that tendency for "about three to five days" and that he wanted to change the tires so that the machine wouldn't have that tendency and to make "it safe for myself and other people". He also testified without contradiction, with regard to repairs: "Why, Mr. Edmunds always told me to have my—the machine fixed, and I would report it to him, so he—during working hours, and when the work was slack and it was to be fixed, I would go down and have it fixed, whatever was to be done to it." With regard to the tires the court elicited the following information: "Q. Did he tell you to go there [Harley Davidson's] when you had your tires changed? A. Well, he—I should have gone there, but— Q. Well, that don't answer the question. Did he tell you to go there if you had your tires changed? A. Why I never told him that—he asked me one morning how were the tires and I says, 'the back tire is down a little bit'. That was about a week before." It also appears from the evidence without contradiction that the oil station at Alvarado and Temple Streets, where the boy said he was going to change the tires, is on the regular route to his home which the witness "pursued every day."

Appellant contends (1) that young Miner had no authority to take the machine out as he did contrary to his employer's instructions; that at the time of the accident the youth was as much a stranger to his employer as one who never had been employed by him and was not at the time acting within the scope of his employment; and (2) that it was error to admit evidence with regard to skidding, etc., over appellant's objection, as there was no proof of agency.

Respondent urges that the change of tires was necessary and for the benefit of the employer and that young Miner was on the way to have it done when the accident occurred, relying in particular on a statement in volume 16, California Jurisprudence, page 1101, to the effect that if the acts complained of are within the scope of the servant's employment the master is no less responsible by reason of their being unauthorized or contrary to his explicit directions, and that as between the master and third persons the acts of the servant performed as a part of the services for which he is employed are as if done by the master, and as between the master and the servant the question of au-

thority to do the particular acts is quite immaterial. It is to be observed in the cases relied on by the author of the text that the particular acts complained of were done during the hours of employment. That is also true in the case of *Mand* v. *Rose,* 96 Cal. App. 564 [274 Pac. 392], also referred to, where the employee was told to wash and polish a car, and finding no polish drove a car of his employer to get some, and while on the trip the accident complained of occurred. The court in that case said that under the evidence the question was peculiarly for the jury, as the deviation from the scope of the employee's authority was not so "great and unusual" as to make it one of law for the court. Respondent also quotes from the case of *Reed* v. *Parra,* 203 Cal. 430 [264 Pac. 757], where the employer was engaged "on a percentage basis to take passengers and collect fares from them at times and places convenient to" the employee, and the court held that there was sufficient evidence upon which to base a finding that the relation of employer and employee existed.

The late Judge Cooley has well said that "the test of liability in all cases depends upon the question whether the injury was committed by the authority of the master, expressly conferred or fairly implied from the nature of the employment and the duties incident to it". (2 Cooley on Torts, 3d ed., p. 1030.)

In the case at bar we find that the act complained of occurred several hours after the employee went off duty. He was not on duty and faced with an emergency, but off duty and no emergency existed, as he had known of the smooth condition of the tire for a week and apparently had not called it to the attention of his employer as a serious thing at any time, and it could have been fixed at the usual place at any time during the business hours of that week or on the boy's way to or from work as he passed the place where he intended to do the repairing. He had no authority or duty to fix the tire himself, and he would have been a mere volunteer in doing it himself. He had no right to use the car for any purpose after he arrived home from work. In the evidence of the case we do not find any authority expressly conferred upon him to do what he did with the motorcycle on the night of the accident, nor can such authority be fairly implied from the evidence.

The inference might be made that the work which he intended to perform was for the benefit of his employer, but that falls far short of imposing a legal liability for an unauthorized use of his employer's vehicle. We are compelled to say, in the language of the court of appeals of New York in *Rose* v. *Balfe*, 223 N. Y. 481 [Ann. Cas. 1918D, 238, 119 N. E. 842], that to justify the finding in the present case that at the time of the accident said Miner was an employee of appellant and acting in the general scope of his employment for and on behalf of the latter "would establish that a master is powerless to direct and control the conduct of his servant, to prescribe the mode and manner in which his work shall be done, and direct when, how and where his property shall be used; that the individual wish or mental operations of the servant are paramount to the express orders of the master"; and we are not prepared to assent to such a doctrine.

We are not faced with a conflict of the evidence on the question involved in this appeal, and the fact of the nonexistence of the relationship of master and servant at the time of the accident, as well as the fact that the act done was not within the scope of the latter's employment, is established by the uncontradicted evidence of all the witnesses under circumstances which afford no indication that the testimony is the product of mistake or inadvertence". Under such circumstances any inference that might arise from the fact that the motorcycle involved was owned by appellant is "dispelled and disappears from the case" (*Mar Shee* v. *Maryland Assur. Corp.*, 190 Cal. 1, 9 [210 Pac. 269, 273]), and any possible conflict goes with it.

Under our view of the case it was error to admit, as bearing upon appellant's liability, the evidence regarding the smooth tire, etc., over his objection, as well as to deny his motion for a nonsuit.

Judgment reversed.

Works, P. J., and Thompson (Ira F.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 15, 1931.