SYLVIA KEER, Respondent, *v.* BEE WRIGHT CLARK (Sued Herein as " MARY " CLARK), Appellant.

First Department, June 17, 1932.

*Joseph F. Hanley* of counsel [*Henry H. Haire* with him on the brief; *Joseph F. Hanley*, attorney], for the appellant.

*L. H. Schleider* of counsel [*Morris B. Moskowitz*, attorney], for the respondent.

MARTIN, J. The plaintiff was injured at about ten P. M. on June 12, 1928, at the corner of One Hundred and Second street and Fifth avenue, New York city, by an automobile owned by the defendant, which at the time was being operated by one Einor Johansen or Johnson, not known to or employed by the defendant. He was a friend of defendant's chauffeur, named Gunnar Modig. The plaintiff was struck by the front right side of the car after it had proceeded south on Fifth avenue and while it was making a left turn into One Hundred and Second street, an east-bound street.

The defendant, a resident of Norwalk, Conn., testified that she employed Gunnar Modig as a chauffeur about two months before the accident; that on the day in question he drove her from her home in Connecticut to the Hotel Warwick, Fifty-fourth street and Sixth avenue, Manhattan, where she engaged a room; that later in the day he drove her to the John Golden Theatre on West Forty-sixth street; that she there gave him instructions to put the car in a garage and to call for her the next morning at about nine o'clock. The defendant testified that she had never allowed the chauffeur to use the car for his personal business on any occasion and that she told him to put the car in a garage on East Sixty-seventh street, which Modig recommended to her, and that she did not know Johnson.

The chauffeur, however, drove the car up to the Finnish Club, located on West One Hundred and Twenty-sixth street, where he met Einor Johnson whom he had known in Finland. Modig testified that he hired a furnished room and had his supper; that he told his friend Johnson that he had to drive the car to the garage, but that he felt " a little sick " as he had been driving all day; that he asked Johnson to drive; that Johnson was driving the car at the time of the accident. The defendant was not in the car at the time the accident occurred and knew nothing about it until it was reported to her by the chauffeur.

The appellant contends that she did not give her chauffeur permission to allow any other person to operate the car; that she should not be held liable for the accident in question because the car was at the time being operated by a stranger to her without

her permission; that she told her chauffeur on Forty-sixth street to take the car to a garage which was on Sixty-seventh street; that the chauffeur had no authority to drive up to West One Hundred and Twenty-sixth street for the purpose of engaging a room and having his dinner. The chauffeur in his testimony admitted disobeying the orders he had received from the defendant, and it was established upon the trial that because of his conduct defendant discharged him the day after the accident.

At the trial the chauffeur was confronted with a statement which he signed for the plaintiff's attorney after he had been discharged, in which he stated he had been given permission to use the car for the purpose of locating a furnished room, and that he had permission from the defendant on other occasions to use the car for his own business. This statement, although signed by him, he repudiated at the trial, stating he had not read it before he fixed his signature thereto. He did admit, however, that on a number of occasions he had used the car without permission.

The sole question involved on this appeal is whether the defendant's car at the time of the accident was being operated with defendant's permission or consent, thus rendering defendant liable for the injuries sustained by the plaintiff. The defendant does not raise upon this appeal the question of lack of proof of negligence or excessiveness of the amount of the verdict.

In *Rolfe* v. *Hewitt* (227 N. Y. 486, 491) the Court of Appeals said: " The rule is well settled that an agent binds his master only as to acts done within his actual authority, or within the apparent scope thereof. (*Timpson* v. *Allen,* 149 N. Y. 513, 519; *Edwards* v. *Dooley,* 120 N. Y. 540, 551.) A servant is acting within the scope of his employment when he is engaged in doing for his master what he has been directed to do, or as Mechem on Agency (Vol. 2, sec. 1875) says: ' Any act which can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of that act, or a natural, direct and logical result of it.' The chauffeur had been directed to do a specific thing. He needed no assistance in doing that act, and if the intestate got into the car at his invitation, or with his permission, he was not acting within the scope of his authority, but contrary to express orders theretofore given. (*Rose* v. *Balfe,* 223 N. Y. 481). When the owner of a private car sends his chauffeur on an errand, that does not give him authority to take into it a person casually met upon the highway. (*Eaton* v. *D., L. & W. R. R. Co.,* 57 N. Y. 382; *Morris* v. *Brown,* 111 N. Y. 318; *Finley* v. *Hudson El. Ry. Co.,* 64 Hun, 373; affd., on opinion below, 146 N. Y. 369; *Raible* v. *Hygienic Ice & Refrigerating Co.,* 134 App. Div. 705.)"

The law governing the subject, especially when the chauffeur is not acting within the scope of his authority, is stated in Huddy on Automobiles (8th edition), section 758, as follows: " The driver of a motor vehicle sent on a particular mission by the owner of the machine is, as a general proposition, acting beyond the scope of his authority when without the knowledge of his employer he invites another person to ride with him."

The fact that the defendant's chauffeur not only carried a passenger but permitted that passenger to drive the defendant's car does not in itself make the defendant liable.

In *Van Blaricom* v. *Dodgson* (220 N. Y. 111, 117) the court said: " The question whether one person is the agent of another in respect of some transaction is to be determined by the fact that he represents and is acting for him rather than by the consideration that it will be inconvenient or unjust if he is not held to be his agent."

In *Chaika* v. *Vandenberg* (252 N. Y. 101, 105) the Court of Appeals said: " Assent must exist at the time of the negligence. Only where the automobile is operated by a person legally using the same with the permission of the owner is the owner liable. Here, according to the testimony of the defendant, he had given his son permission to use the automobile only on Long Island. When the accident occurred the son was operating the car in New York city. The restricted permission did not cover such use. At that time the son was operating the car illegally and without the assent of the owner."

At page 106 of its opinion the court said: " The statute imposes liability upon the owner of a motor vehicle for the negligence of ' any person legally using or operating the same with the permission, express or implied, of such owner.' The question before us is whether that language may be construed to include a case where injuries are caused by a person who, at the time of the accident, was using the motor vehicle unlawfully, without permission of the owner and even contrary to his orders, merely because the owner had given the person operating the vehicle permission to use the vehicle for another purpose at another place."

In *Fluegel* v. *Coudert* (244 N. Y. 393) the court said: " We think the uncontradicted evidence necessitates the conclusion that the driver of the motor car was using it at the time of the accident for his own purposes exclusively, without the permission and against the commands of the defendant, his employer. (*Der Ohannessian* v. *Elliott*, 233 N. Y. 326.)    *   *   *

" Liability is no longer dependent upon use or operation by a servant in the ' business ' of a master. Liability is dependent upon legal use or operation in business ' or otherwise,' with permission or consent.    *   *   *

" The driver employed by this defendant was not using or operating this car with the owner's permission, express or implied. He was not using or operating it legally. Use or operation without the consent of the owner may now constitute a crime. (Penal Law, § 1293-a.)"

The testimony of the witnesses clearly established that the defendant's car was being used without defendant's permission and contrary to her orders. She directed that the car be placed in a garage. The order was given on Forty-sixth street and the garage was on Sixty-seventh street; nevertheless the chauffeur drove the car uptown on his own business to East One Hundred and Twenty-sixth street and was returning to the garage when the accident happened. If he had obeyed instructions he would not at any time have been in the vicinity where the accident occurred. The testimony of the chauffeur clearly indicated that he was using the car without permission at the time of the accident. He could not, therefore, confer any right or delegate any authority to Johnson to drive defendant's car for him or to obligate the defendant in any way.

If the contention of the plaintiff is upheld, a chauffeur in violation of the orders of the owner could permit any incompetent person to operate a car and make the owner liable, even in view of the fact that it might be shown that the person to whom permission to operate the car was given had no license and knew nothing about the operation of a car. It would be unreasonable to hold an owner under such circumstances.

The defendant in this case should not be held liable for the injury received by the plaintiff since the car was being used without her authority.

The judgment should be reversed and a new trial granted, with costs to appellant to abide the event.

FINCH, P. J., McAVOY, O'MALLEY and TOWNLEY, JJ., concur.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.