PALMER v. BASSETT.

*95 P. 2d 872.*

No. 28679.   Oct. 24, 1939.

Clayton B. Pierce and Truman B. Rucker, both of Oklahoma City, and E. C. Hooper, Jr., of Eufaula, for plaintiff in error.

F. A. Greene, of Eufaula, for defendant in error.

BAYLESS, C. J.   Phil Bassett recovered a judgment in the district court of McIntosh county, by the consideration of a jury, against T. H. Palmer, engaged in business under the trade name of Eufaula Wholesale Grocery, and Palmer appeals.

Bassett was injured in a collision between an automobile on which he was riding and a truck owned by Palmer and operated by Cannon, an employee of Palmer.   No issues are made in this appeal upon any aspect of the case save that of Palmer's responsibility for the acts of Cannon at the time of the collision.

We quote Palmer's brief to show the precise issue presented.

"The defendant's motion for a directed verdict and requested instruction number one presented the defendant's theory that defendant was not responsible as a matter of law. The defendant's requested instructions Nos. * * * presented defendant's alternative theory that this was a disputed issue of fact for the jury to pass upon."

And again:

"There may be some question as to whether or not the defendant was entitled to have a directed verdict because of the departure or deviation of the driver Cannon from the business of the defendant."

In the last sentence is the substance of Palmer's defense that, although Cannon was his employee, he departed from the errand and deviated from the master's business and thereby rendered inapplicable the rule respondeat superior.

At this point we desire to say that there is no dispute concerning the rela-

tion between Palmer and Cannon until the time Cannon violated the directions given him by Palmer, nor is there dispute concerning what Cannon did thereafter. The issue virtually resolves itself into the query: Had Cannon resumed the master's service at the time of the accident? The effect of the instructions given to the jury by the trial judge was to say as a matter of law that the departure or deviation was ended and the master's service had been resumed.

We are inclined to the view that the issue was one of law for the court to declare to the jury. The facts were not in conflict on the point and consisted entirely of the evidence introduced by Palmer. In such an instance we believe that it was the duty of the trial judge to say to the jury whether the law raises the relation of agency from the particular, undisputed facts. Palmer takes this view of the law, but only if the trial judge undertakes to say that the law does not raise the relation of agency from such undisputed facts. We do not agree with this contention. If the trial judge properly has the duty to instruct the jury upon this point, he may instruct them upon either alternative. We do not believe it is logical to say that the existence of this power to instruct depends upon the view of the law.

The question now is, Did the trial judge correctly instruct the jury when he instructed it that the master's business had been resumed?

Palmer cites the decision of Cannon v. Goodyear (Utah) 208 P. 519, and a number of decisions from other states that follow its rule, in support of his contention that Cannon could not rightfully resume the master's service under the circumstances.

In Huddy, Encyclopedia of Automobile Law (9th Ed.) vol. 7-8, page 261, § 96, note 98, it is said:

"After total abandonment of service. But when the use of the car by the driver is *entirely* unauthorized, or if the driver has completely forsaken his employment, the entire use thereof, both in going and in returning, is not in the furtherance of the master's business and the owner should not, according to the better authority, be liable for the negligent acts of the chauffeur until his return to the point of departure, or to a point where, in the performance of his duty, he should be."

No Oklahoma cases on the precise point are cited, and those that are relate to the burden that rests upon the plaintiff herein to establish employment and the pursuit thereof, at the time of the accident, and to the absence of any presumption of employment. Wilson & Co. v. Shaw, 157 Okla. 34, 10 P. 2d 448, and Barall v. McDonald, 172 Okla. 276, 44 P. 2d 997, and other cases.

We think it is significant that the rule relating to the nonexistence of a presumption, or an inference, of agency is limited to that only, and it is not said that no presumption or inference exists with respect to whether the relation exists, after having come into existence, at the time of the incident.

The rule respecting the burden of proof is admitted to have rested upon the plaintiff herein at the outset, but he never was required to meet it. Palmer admitted that Cannon was his employee and was driving his truck, and limited his defense to the proposition that Cannon had deviated from or departed from or abandoned the service and had not resumed it at the time of the accident.

Therefore, in such an instance as this, where the facts are undisputed, the issue of whether the servant has resumed the service is one of law, presumed or inferred from the facts.

The undisputed facts in this case show: That Cannon drove Palmer's truck from the place of business at Eufaula on the day of the accident for the purpose of delivering merchandise to customers of Palmer over a specified route ending at Hartshorne, Okla.; that Palmer did not permit his employees to engage in these services after 6:00 o'clock p. m. of the day, and that their routes for delivery were so calculated as to enable them to

return to his store by that hour each day; that Cannon was so directed and his route and deliveries so arranged on the particular day that he finished his deliveries at Hartshorne at 4:00 p. m. and started on his return to Eufaula in ample time to reach there by 6:00 p. m., and his return journey was a retrace of his outgoing journey; that when he reached McAlester on the return he deviated from his road, and took supper with his parents and visited friends, and thus spent several hours on matters of his own; thereby violating the master's directions and abandoning the master's service. About 10:00 o'clock p. m., he took the truck to the highway from which he deviated, and resumed the return journey. The accident happened when he was very near Eufaula and while he was virtually at the end of his journey.

The question is: Can it be said as a matter of law that he had resumed the master's service or was he performing a service for the master in returning the truck to Palmer's place of business?

There are three lines of cases on this point. James v. Williams & Son, 177 La. 1033, 150 So. 9, and authorities cited therein, lay down the rule that once the servant, who had deviated from or abandoned the master's service, has finished the independent mission and has turned in the direction of the master's business or the point of departure, the service is resumed. These are the cases upon which Huddy bases the quotation above, including Bloodgood v. Whitney, 235 N. Y. 110, 139 N. E. 209, that hold the service is resumed upon "* * * return to the point of departure, or to a point where, in the performance of his duty, he should be." The third line of cases, including Cannon v. Goodyear, supra, relied upon by Palmer, hold that when the servant's service has been performed, except the return of the automobile to the master, and the servant neglects to return the automobile as directed, but uses it on a mission of his own and continues thereon after the usual working hours, the act of returning the automobile to the place directed by the master is no part of the master's service, but, rather, is the performance of a moral or legal duty resting upon the servant, irrespective of the relation of master and servant, to return to the owner the automobile wrongfully withheld. For an annotation of these cases see 22 A.L.R. 1400, and Am. Digest (West) Automobiles, Key Nos. 193 and 195.

Since Palmer relies upon these cases, and since they are in conflict with other cases, and since the facts in Cannon v. Goodyear, supra, are similar to the facts in this case, we quote so much of that opinion as discloses the reasoning upon which it is based:

"That it was the duty of Kratzer to return the truck to the garage, even if it was done at a belated hour, is not and cannot be a debatable question. It would have been his duty to return it even if he had feloniously stolen, taken, and driven it away. There is both a moral and a legal duty imposed upon every man to restore to the owner property wrongfully taken or withheld, and this duty is in one sense dependent upon the relation of master and servant or of employer and employee. Hence, when we speak of the duty of Kratzer to return the truck to the garage, it signifies but little in the instant case, unless from the nature of the case we can also determine the character of the duty. As further emphasizing the view of the writer, let us suppose that when Kratzer made his last delivery for the day at the Short Line depot he had immediately returned the truck to the garage in pursuance of his employer's instructions. Suppose further that after returning the truck to the garage he had later called for it and taken it away and had then done the very thing he did do, as detailed in the evidence. In such case it could not be consistently contended that in returning the truck to the garage he was engaged in the business of the defendant or acting within the scope of his employment. That such a contention could not be sustained by either reason or authority seems to be beyond the possibility of rational disputation. It would not only be contrary to reason and authority, but would also be the rankest kind of injustice and oppression, to hold that returning the truck to the garage in the

**8**

case supposed was a service within the scope of Kratzer's employment so as to render his employer responsible for his negligence. I see no difference in principle, as far as the proposition of law is concerned, between the case supposed and the case disclosed by the record. In the one case he wrongfully withheld possession of the truck after it should have been returned to the garage; in the other he wrongfully took it into his possession. In either case he was both morally and legally bound to return it, entirely independent of any duty incident to his employment. In the course of this discussion the fact should be continually borne in mind that from 1:30 p. m. on the day of the accident until 8:30 a. m. on the Monday following Kratzer was complete master of his time and was in no sense subject to the defendant's direction or control. Whatever he did in such circumstances during said period of time certainly should not be attributed to his employer, who had no knowledge of what he was doing nor power to direct or control his conduct. This is the principal distinguishing feature between this case and the cases upon which appellant relies."

The reasoning therein is adopted by other courts, as can be seen from Fletcher v. Meredith (Md.) 129 Atl. 797, and Susser v. Delovage (Mont.) 236 P. 1082, and other cases. The effect of such reasoning is to say that when the servant has abandoned the master's business and embarked on a mission of his own, he is thereafter incapable of resuming the service until he has completed his mission and has returned the master's automobile into the master's possession and has been sent on another mission by the master.

As pointed out by the Utah court, such an abandonment of the master's service and retention of the automobile is analogous to a felonious taking by the servant after he has returned the automobile into the master's possession as per directions. We do not agree with the analogy thus made. It seems apparent that, where a servant has taken the automobile from the master's possession at the very outset, without the master's knowledge or permission, and so uses it, there can be

no service to resume. The servant cannot during that time do an act for which the master is legally responsible. No intention can exist in law to resume a status that had not existed. It seems to us that there is a vast difference in law and fact between the supposed instance and the one here. The servant was rightfully in possession of the automobile during most of the day. His return journey, undertaken after the last delivery was made, was at the master's direction. His departure from the service and use of the automobile for his own purposes were without the master's knowledge and consent, and his withholding of the automobile was wrongful. But, when this hiatus in service was closed, and when he undertook to complete his return journey and to return the automobile to the master's place of business, there was a previous service and a previous rightful status to which he could return.

It is worthy of notice that while Palmer was emphatic in his directions respecting the observance of the closing hour, he did not undertake to say that the driver passed out of his service instantly at 6:00 o'clock p. m. He spoke of sending after the trucks with a repair car when they broke down. But he did not undertake to say that if the drivers were unable to return the trucks at 6:00 p. m., through no fault of their own or through willful disobedience of directions, they were to abandon the trucks where they were and leave them. He did say that he did not pay them for overtime, but he did not say they were to park the trucks and leave them at 6:01 o'clock p. m., and that they were forbidden to touch them until given authority so to do thereafter.

Some of the cases discuss the element of direction and control, or obedience of the servant to the master's direction. But we think this is of far more importance in determining the issue of the master's responsibility during the interval of deviation than in determining the issue of return, and especially so under facts such as hereunder.

To hold that after the servant has returned to the point of departure and has resumed the prescribed return journey, and has pursued it to a point that makes clear beyond doubt that he is returning the truck to the master, the servant is only obeying a legal duty to restore property wrongfully withheld and that he is not performing any service for the master arising out of the previous relationship, and the relationship thereafter continued, is to arbitrarily and unreasonably ignore the several factors that have given rise to the rule of respondeat superior.

We are of the opinion that the trial court correctly instructed the jury that the relation of master and servant existed at the time of the accident, and that the servant was in the course of his employment at the time.

The judgment is affirmed. The plaintiff's motion for judgment against Maryland Casualty Company, surety on the supersedeas bond, is granted.

Affirmed, motion for judgment on supersedeas granted.

WELCH, V. C. J., and GIBSON, DAVISON, and DANNER, JJ., concur.