JOSEPH R. BURKE *v.* THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued June 7—decided July 16, 1946

*Cyril Coleman,* for the appellant (defendant).

*Robert P. Butler,* for the appellee (plaintiff).

Brown, J. This is a negligence action to recover damages for personal injuries, and for damage to the plaintiff's automobile, caused by a collision of the front of the defendant's car with the rear of the plaintiff's car. The jury rendered a verdict of $12,500 for the plaintiff. The defendant filed a motion to set it aside on the ground that it was excessive. The court denied the motion and the defendant has appealed. Whether the court erred in so ruling is the sole question for determination.

The plaintiff offered evidence of these material facts: As the plaintiff was driving his car easterly on a highway in Bolton on the morning of November 23, 1943, he stopped to pick up a passenger. The defendant's agent, who was driving its car behind that of the plaintiff, negligently ran into its rear with sufficient force to break off the back of the seat in which the plaintiff sat and cause $300 damage to his car. The plaintiff felt no pain at the time and after the collision walked to a nearby house to telephone. He then assisted in trying to push the defendant's car out of the traveled portion of the highway and later drove his own car to Manchester. He was a man twenty-eight years of age at the time and well developed physically. The next day he first complained of pain in his back and went to a doctor. He was employed as a machinist at the United Aircraft Corporation. Because of the injury he lost about four weeks' time in his work and thereafter was not able to earn quite as much as he had before.

The plaintiff sustained no injury to the bony structure of his back. A cervical strain which he did receive had entirely cleared up before trial. His only other injury as diagnosed by his doctor was a

"tear of the muscles and ligamentous tissues of the lower back, the supportive elements of the back." He prescribed diathermy treatments and the use of a brace to support the back. The plaintiff procured the brace, which he had used from shortly after the accident to the time of trial. He had also had diathermy treatments regularly. The pain in his lower back persisted notwithstanding. It was his doctor's opinion that the torn muscles and ligaments had "become invaded by . . . fibrous tissue, which is a dense, nonresilient stiff tissue" which causes restriction of motion and pain, and that the plaintiff, though this condition may improve, will never become entirely well. Pursuant to his doctor's instructions, the plaintiff, ever since he began to wear the brace, has left it off in so far as he could "up to the point of pain," but thinks he could not work without wearing it, though he has never tried it. In his doctor's opinion to do so would incur danger of aggravating the injury. The pain extends down into the plaintiff's legs when he gets tired, he has complained of weakness in his leg at times, and as a protective gait he has developed a limp in his left leg.

Before the accident the plaintiff was physically active, engaging in vigorous out-of-door sports and doing such work at home as taking care of a coal furnace and the family garden. By reason of his injury he is unable to do these things, although, pursuant to his doctor's advice, he has attempted various such physical activities up to the point of extreme pain. He customarily lies down for a rest upon his return from his day's work and at times his night's sleep is disturbed by pain. Sitting in one position too long in driving a car or attending

the movies causes him discomfort. During the six months preceding trial there was no appreciable improvement in his condition. The average life expectancy at his age is thirty-five years. His total special damage, for treatment, loss of earnings and damage to his car, approximated $2000.

The vital conflict between the evidence of the plaintiff and that of the defendant was whether or not the injury is permanent. The doctor produced by the defendant, who had examined the plaintiff, testified that his symptoms were entirely subjective and that in his opinion the plaintiff had sustained no permanent injury or disability. The plaintiff's doctor testified that his opinion was to the contrary, based upon the plaintiff's subjective symptoms and also upon conduct and reactions of the plaintiff which he had noted and which confirmed these symptoms. A fundamental question presented for the jury's determination, therefore, was whether or not the plaintiff was a malingerer. The questions propounded to him to emphasize the claimed consequences of his injury afforded him a maximum of opportunity to assume that role if such was his intent and purpose. In an attempt to show that it was, the defendant introduced in evidence a moving picture of the plaintiff diving and swimming in July, 1944, taken without his knowledge, to contradict his testimony that since the accident he had been unable to indulge in such sports. Incidentally, the record does not bear out the defendant's claim in this connection that the opinion of the plaintiff's doctor was so essentially predicated upon the plaintiff's absolute abstention from any such activity that it must be held unworthy of belief. Whether the plaintiff was malingering was a question peculiarly for the

determination of the trier before whom he testified. Upon this record, suggestive though it is of the possibility that he was, this court cannot say that the trial judge, who also had the opportunity of observing the plaintiff on the stand, was unwarranted in concluding that the jury could properly find that he told the truth. See *Monczport* v. *Csongradi,* 102 Conn. 448, 454, 129 A. 41; *Corey* v. *Phillips,* 126 Conn. 246, 256, 10 A.2d 370; *Masi* v. *General Ice Cream Corporation,* 120 Conn. 259, 262, 180 A. 455.

That the court's decision that the jury's appraisal of the plaintiff's testimony as credible rather than untruthful cannot be disturbed, however, is not conclusive that they were warranted in awarding the amount of damages which they did. Whatever the plaintiff's injury, it is undisputed that the bony structure of his back was not affected, and that there was none to its soft tissues which was either observable or discoverable, except as manifested by words or conduct of the plaintiff. The fact that except for a total period of less than a month shortly after the accident the plaintiff's injury had at no time kept him from continuous and regular employment as a machinist during the two years to the time of trial, and the further fact that there was no evidence that it would prevent him from working regularly in the future, require most careful consideration of the evidence of prospective damage. Notwithstanding these facts, however, the plaintiff's testimony was that at the time of trial, which was two years after the accident, he was still suffering pain, that he still had to wear the brace most of the time, that he could not indulge in the sports to which

he had been accustomed except in a very limited way, and that he could do only certain types of work. Furthermore, his doctor testified that in his opinion, while the plaintiff's condition might improve somewhat, he did not think that he would ever be entirely well and free from some restriction of motion and pain. Since the jury could have believed this evidence of probable future pain and suffering and permanent physical handicap likely to affect materially the employment and earnings of the plaintiff, we cannot hold that the amount of the verdict was so clearly excessive as to warrant interference by this court. *Quackenbush* v. *Vallario,* 114 Conn. 652, 655, 159 A. 893; *Samaha* v. *Mauro,* 104 Conn. 300, 302, 132 A. 455; *Ratushny* v. *Punch,* 106 Conn. 329, 336, 138 A. 220.

There is no error.

In this opinion the other judges concurred.